## THE CITY OF WYANDOTTE v. CAROLINE GIBSON, *Adm'x, &c.*

1. IMPROPER ANSWER; *Practice.* Where a question is proper, but the answer contains testimony irrelevant or incompetent, the remedy of the party injured thereby is a motion to strike out such testimony. (*Hynes v. Jungren,* 8 Kas. 391; *Stone v. Bird,* 16 Kas. 488.)

2. CITY, *When Negligent as to its Streets; Jury.* When a city in grading a street leaves a high and steep embankment in the street, without railing, light or other guard or warning to prevent those passing on such street from falling off such embankment, it may be adjudged guilty of negligence, although the width of the cut and the height of the embankment were established by the council, and although the work of grading was done in a proper and careful manner. The negligence consists, not in the plan of the work or the manner in which it was done, but in the failure to provide suitable protection against accident after the work of grading had been finished. Whether such omission to provide railing, etc., was in any given case negligence, depending as it does upon many considerations, such as the amount of travel on the street, etc., is a question of fact for the determination of a jury.

3. ——— A party has a right in a jury trial to have answers returned to specific questions as to material facts, and a denial of this right is error. (*Bent v. Philbrick,* 16 Kas. 190.)

4. ——— What is a material fact, is a question to be determined by the court.

5. ——— When the court has decided to submit a question, ordinarily the jury should be required to answer it before they are discharged.

6. ——— A failure to compel an answer is in effect a withdrawal of the question, and is the same as though the court had refused to submit it in the first instance.

7. ERROR, *Not Requiring Reversal of Judgment.* Notwithstanding a refusal to submit a proper question, or a failure to compel an answer thereto,

if the answers returned to the other questions, together with the undisputed facts of the case, compel just such a general verdict as is returned, the error is not such a one. as requires a setting aside of the judgment and the granting of a new trial.

*Error from Leavenworth District Court.*

ACTION brought by *Caroline Gibson*, as administratrix of the estate of her husband, Thomas Gibson, deceased, against the *City of Wyandotte*, to recover damages in the sum of $10,000, on account of the death of her husband, alleged to have been caused by the negligence of said city in maintaining one of its public streets in an unsafe and dangerous condition, and in carelessly allowing a dangerous excavation to remain therein without guards, barriers, lights or signals, by reason whereof the deceased, while traveling upon said street in pursuit of his lawful and necessary business, without fault on his part, was precipitated into said excavation, and received injuries which caused his death. A judgment in favor of the city, at the March Term, 1874, of the district court, was reversed by the supreme court. (20 Kas. 156.) Thereafter a change of venue was made to Leavenworth county, where a trial was had at the December Term, 1879, of the district court, when the jury found for the plaintiff, and assessed the damages at $3,130; and to the following questions of fact submitted at the request of the defendant, the jury returned answers in writing as follows:

"1. Were the injuries received by Thomas Gibson, the deceased, in falling into the excavation on Fourth street in defendant city, on the night of November 30, 1872, the immediate cause of his death? A. Yes.

"2. Did the deceased, Thomas Gibson, know of the presence of said excavation in said Fourth street before he fell into the same, and prior to November 30, 1872? A. No.

"3. How long prior to said 30th day of November, 1872, had the deceased, Thomas Gibson, knowledge of said excavation in said Fourth street? A. No time.

"4. Was the deceased, Thomas Gibson, in a position, or was he placed under such circumstances, that he could have had knowledge of such excavation, by exercising ordinary care and prudence? A. No.

"5. Was the deceased, Thomas Gibson, a man of sufficient intelligence to know the danger he was incurring by walking upon that portion of Fourth street where he is alleged to have received his injuries, after dark, without a light? A. Yes.

"6. If you find that the deceased, Thomas Gibson, had knowledge of said excavation in said Fourth street, prior to the time of the alleged injury, did said Thomas Gibson exercise ordinary care and prudence in traveling upon that portion of said Fourth street, after dark, without a light, if he did so travel? A.

"7. Was the deceased, Thomas Gibson, at the time he fell into said excavation, walking upon that portion of said Fourth street without a light? A. Yes.

"8. Did the deceased, Thomas Gibson, upon the night he is alleged to have fallen into said excavation on said Fourth street, take any precaution whatever or exercise ordinary care and prudence to guard against an accident at that point? A.

"9. What precaution did he take to guard against an accident at said locality on said Fourth street? A.

"10. Was the deceased, Thomas Gibson, at the time he fell into said excavation on said Fourth street, exercising ordinary care and prudence? A.

"11. Could the deceased, Thomas Gibson, by the exercise of ordinary care and prudence, have prevented said falling into said excavation on said Fourth street, upon the night of November 30th, 1872, from happening? A.

"12. Would said deceased, Thomas Gibson, have fallen into said excavation had it not been for his own lack of ordinary care and prudence? A. Yes.

"13. Was the locality on Fourth street in defendant city, where the deceased, Thomas Gibson, is alleged to have received his injury, a place of known danger, and was that fact known to deceased prior to the time he is alleged to have received his injuries? A. No.

"14. Was the excavation on Fourth street, at the place of the alleged injury, made pursuant to a plan adopted and ordered by the city council of said defendant, and in accordance with said plan? A. Yes.

"15. Was the defendant guilty of any negligence in doing the work necessary in making said excavation? A. No."

Thereupon the defendant objected to the discharge of the jury until they had answered the sixth, eighth, ninth, tenth and eleventh questions, which objection the court overruled.

A new trial was denied, and judgment given in accordance with the verdict. The defendant brings the case to this court.

*John A. Hale,* for plaintiff in error:

The court erred in allowing the witness Boscow to testify as to conversations had with the deceased, whose declarations were not against his interest, and did not form a part of the *res gestœ.* (1 Whar. Ev., §§ 170, 226, 265; 8 Kas. 351; 21 Ohio St. 642; 26 id. 185.)

The court erred in refusing to give for the city defendant the third special instruction, which stated the law applicable to the case in a clear and concise manner, and explained to the jury clearly what among other acts would constitute a want of ordinary care upon the part of the deceased, and prevent a recovery for the alleged injuries. (Field on Damages, § 177; 2 Ind. 586; 2 N. H. 392; 8 Allen, 137; 18 Wis. 331; 50 Mo. 302; 52 id. 252.)

The court erred in refusing to give the fifth special instruction asked for by the city, which stated the law applicable to the case; for if the deceased was not free from all negligence which contributed to the alleged injury, the plaintiff below could not recover. The court in its charge to the jury failed to so instruct them. (Sherman & R. on Neg., § 39; 18 N. H. 248; 21 Pick. 146, 256; 12 Metc. 415.)

The court neglected in its charge any explanation as to what constitutes "ordinary care," and so left the jury groping in darkness.

The court erred in refusing to require the jury to answer the special findings submitted by the plaintiff in error, and in discharging the jury, over the objection of plaintiff in error, before they answered all of said special findings. (Code, §§ 286, 287; 14 Kas. 38, 290; 10 id. 294; 8 id. 267; 21 id. 484.)

The court erred in rendering judgment in favor of the defendant in error and against the plaintiff in error, for the reason that there was no sufficient verdict of the jury to warrant such judgment, the special findings being as much a part

of the verdict as the general verdict itself. (8 Kas. 633; 36 Ind. 120.)

*Guthrie & Brown, John W. Day, Henry L. Alden,* and *Thos. P. Fenlon,* for defendant in error:

The answer of the witness Boscow is probably not strictly responsive to the question, and may contain evidence not strictly competent. The remedy of the defendant in the court below was to move the court to strike such testimony out of the case. Not having moved its suppression in the court below, the plaintiff cannot complain of it for the first time in this court. (9 Kas. 118; 8 id. 395; 16 id. 491.)

Special instructions were asked by both parties, all of which were refused, and the court instructed the jury in its own language, which it had a right to do. (9 Kas. 257; 49 Mo. 423; 13 Wall. 270.) The court is not bound to repeat instructions to the jury, or to give the same in the exact language asked by the parties. (5 Kas. 311; 6 id. 371, 471; 8 id. 159; 13 id. 116.)

This court recognizes the right of the trial court to refuse to submit questions asked by the parties. (21 Kas. 500–502, 516. See also 22 Kas. 69; 16 id. 557.)

The questions which were not answered by the jury, and were afterward withdrawn by the court from their consideration, (for the refusal of the court to compel the jury to answer such questions was virtually a withdrawal of the questions from the jury,) were rendered unnessary and immaterial by the findings of the jury that the deceased had no knowledge, and from his position and circumstances could have had no knowledge, of the dangerous condition of said street. And while the questions might have been properly submitted, and the court might have properly required them to be answered, its refusal so to do is an immaterial error, if error at all; for had all of such questions been answered in the negative, it would not defeat or change the right of the plaintiff to recover. (21 Kas. 516.)

The opinion of the court was delivered by

Brewer, J.: Thomas Gibson, plaintiff's intestate, fell off an embankment in one of the streets of the city of Wyandotte, and received injuries from which he died. Thereafter this action was brought. A judgment in favor of the city was reversed by this court. (20 Kas. 156.) After a change of venue to Leavenworth county, upon a trial, plaintiff recovered judgment; and to reverse that judgment this proceeding in error has been brought. The general facts are, that the city, in grading Fourth street south from Minnesota avenue, made a cut in front of the residence of James A. Cruise of about forty feet in width and from twelve to fifteen feet in depth. As the street was eighty feet in width, there was a space of about twenty feet between the front fence around Mr. Cruise's lots and the edge of the embankment. Along this edge, no railing, light or other guard against accident was placed. On the evening of the injury, Mr. Gibson went to the house of Mr. Cruise to pay him some money. After transacting this business, he started home, and, the night being very dark, fell off the embankment and received the injuries.

Now the negligence imputed to the city was not in the manner in which the grading was done, or in grading only half the width of the street, for the work was properly done, and the width of the cut was a matter for the council to determine, but in leaving such an embankment in the street without railing, light, or other guard against such accidents as that which befell plaintiff's intestate. Indeed, the same question of negligence would arise if the embankment had been a natural one instead of being caused by the city's grading, though there might, perhaps, be a greater necessity for erecting barriers in the one case than in the other. Whether this omission was negligence, depends on many things: the proximity to the business portion of the city; the amount of travel over the street; the depth of the cut; and, indeed, every other fact bearing upon the question of the probability of the occurrence of just such an accident as did in fact happen.

16 — 25 Kas.

There might be no negligence in leaving unprotected an embankment in an unfrequented street in a remote portion of the city, and yet the grossest negligence in leaving unprotected a similar embankment on the main street and in the heart of the city. And this question of negligence is one of fact for the jury, subject to the revising power of the court only when there is manifest error in their decision. Such error is not apparent in this case. The jury were warranted in holding it negligence to leave this embankment unprotected. So far as contributory negligence on the part of plaintiff's intestate is concerned, that depends upon whether he knew of this cut. If ignorant of it, we see nothing in his conduct to which negligence could be imputed. If he knew of it, he was evidently careless and negligent. The weight of the testimony is apparently in favor of his knowledge. Much of this, it is true, as counsel for the city urges, is in deposition, but not all; and that portion of the *testimony* tending to show this knowledge is directly attacked by plaintiff, who was present, and testified orally. So that a question of fact was fairly presented, whose decision by the jury must be accepted as conclusive. Upon the general questions, then, of the negligence of the city and of plaintiff's intestate, we see nothing to warrant the setting aside of the conclusions of the jury. Whether we should have given as full credence to the plaintiff's testimony as against the defendant's, is very doubtful; but we may not assume the functions of the jury, and must accept their decision upon questions of fact.

We pass now to the consideration of certain specific errors alleged by the learned counsel for the city. And first, the testimony of Mrs. Boscow, the daughter of plaintiff, is challenged, in so far as she spoke of conversations with the deceased. We agree with counsel, that such testimony was improper; but the questions to which such testimony was returned in answer, were proper. The court ruled correctly in overruling the objection to them. And if the answer was not responsive—or, being responsive, contained matters of which the witness might not speak—the remedy was, by mo-

tion to strike out such answer. The only ruling which the court made was correct. (*Hynes v. Jungren*, 8 Kas. 391; *Brumbaugh v. Schmidt*, 9 Kas. 117; *Stone v. Bird*, 16 Kas. 488.)

The next objections are to the failure to give certain instructions. The court put aside all the instructions asked by the parties, and prepared the entire charge to the jury. If in this charge it covered the entire ground, and instructed the jury upon all matters necessary for their determination, and instructed them correctly, this is sufficient. It is not essential that the exact language of counsel be adopted. Now an examination of the charge shows that the court placed the questions before the jury in language most clear and appropriate. Eliminating all superfluous matters, it stated the two vital questions, and the law applicable to them, in language so clear and apt that no one could have been mistaken. Counsel urges that no definition of ordinary care and ordinary negligence was given. That may be technically correct; and yet the court in placing before the jury the duties and rights of the respective parties, so stated them that no one could mistake as to the scope and import of the legal phrases " ordinary care" and "ordinary negligence."

We pass to the final matter; and it is the only one that has given us any real trouble. Several questions were submitted to the jury. Besides the general verdict, they answered many of those questions, but some they failed to answer. Nevertheless the court, over the objections of defendant, received the verdict and the answers returned without insisting upon answers to the questions not answered. Now that a party has a right to have specific questions submitted and answered, has been repeatedly affirmed. (*Bent v. Philbrick*, 16 Kas. 190; *Morrow v. Comm'rs Saline County*, 21 Kas. 484; *L. L. & G. Rld. Co. v. Rice*, 10 Kas. 426.) But this right is not one which enables him to determine what are material facts, and what questions must be answered. He may present any number of questions for submission, as any number of instructions, but it is the duty of the court to determine what in the one

case shall be submitted, as in the other what shall be given. And the court by declining to compel the answer to any specific questions, in effect withdraws them from the jury. And this the court may do, if in so doing no material question is deprived of a specific answer. Sometimes the answer to one question renders unnecessary and improper any answer to another. Such is the case at bar. The sixth question reads: "If you find that the deceased, Thos. Gibson, had knowledge of said excavation in said Fourth street, prior to the time of the alleged injury, did said Thos. Gibson exercise," etc. Now as in response to a prior question the jury had answered that he did not know of such excavation, this question ceases to be one capable of answer. It is based upon a condition which did not exist. And this is very common and very proper practice. It cannot be known in advance how any particular question may be answered by the jury, and a party may properly frame questions based upon an answer either way. And in such cases the answer to the prior question determines the materiality of the subsequent interrogatories. If this were all in the present case, we should have little trouble; but two or three questions were submitted, answers to which should have been returned. Take the following:

"8. Did the deceased, Thomas Gibson, upon the night he is alleged to have fallen into said exacavation on said Fourth street, take any precaution whatever, or exercise ordinary care and prudence to guard against an accident at that point?

"9. What precaution did he take to guard against an accident at said locality in said Fourth street?

"10. Was the deceased, Thomas Gibson, at the time he fell into said excavation on said Fourth street, exercising ordinary care and prudence?

"11. Could the deceased, Thomas Gibson, by the exercise of ordinary care and prudence, have prevented said falling into said excavation on said Fourth street, upon the night of November 30, 1872, from happening?"

Now these run directly to the matter of contributory negligence. They touch upon a substantial matter of defense; and they are not conditional, or based upon prior interrogatories; and they ought to have been answered. It was error

to permit the jury to separate without answering them. And generally it is true that, where an unconditional question is submitted, an answer should be compelled before the jury are discharged. Notwithstanding this error, we are constrained to hold, yet with some hesitation, that the error is not such a one as in this case compels a reversal. And for this reason: an examination of the testimony satisfies us that only on the assumption that the deceased knew of this excavation could any negligence be imputed to his conduct. If ignorant of such excavation, he did nothing which any prudent and careful man would not have done. And the jury, in answer to a specific question, find that he did not know of the excavation, or that it was a place of danger. They also answer the twelfth question thus:

"12. Would said deceased, Thomas Gibson, have fallen into said excavation had it not been for his own lack of ordinary care and prudence? *Answer:* Yes."

Putting these facts together, it would seem to be resting too much upon the mere form of proceedings to send the case back for a new trial. There can be no doubt as to the understanding of the jury upon these matters. They directly say that he had no knowledge of the excavation; and they impliedly say that he was guilty of no imprudence which contributed to the injury. Their general verdict is sustained by all the facts they found, and nothing appears beyond the facts found which in any manner makes against such verdict.

There is no other matter presented which has not already been passed upon by this court in prior cases. The judgment will therefore be affirmed.

All the Justices concurring.