THE MISSOURI PACIFIC RAILWAY COMPANY v. M. P. M. CASSITY, as *Administrator of the estate of Tillman P. Hinshaw, deceased.*

1. INSTRUCTION, *When Error to Refuse.* It is error to refuse to give a special instuction which correctly states the law, and is material under the evidence, unless the court in its general instructions sufficiently instructs the jury upon the matter presented by the special instruction asked and refused.

2. VERDICT OR FINDINGS — *When Set Aside, When Not.* Where there is a conflict in the testimony of witnesses, it is the exclusive duty of the jury to weigh and determine what facts such evidence proves, and when there is any proper evidence which supports the verdict or findings of the jury, such verdict or findings will not be set aside, although the apparent weight of the evidence is against the verdict or findings ; but where there is no evidence to support a verdict or a finding, and much more where the verdict or findings are against all the evidence in the case, they should be set aside.

*Error from Nemaha District Court.*

THE nature of the action, and the material facts, are stated in the opinion.

*Conwell & Wells, B. P. Waggener, D. Martin,* and *J. W. Orr,* for plaintiff in error.

*M. A. McCoid,* and *J. E. Taylor,* for defendant in error.

Opinion by STRANG, C.: September 11, 1885, Tillman P. Hinshaw was killed by the cars at Wetmore station on the Missouri Pacific Railway, in Nemaha county, Kansas. M. P. M. Cassity was afterward, at Washington county, Kansas, the domicile of said Hinshaw at the time of his death, appointed administrator of the estate of said Tillman P. Hinshaw, deceased. Cassity, as such administrator, on the 3d day of June, 1887, commenced this action in the district court of Nemaha county to recover damages for the killing of said Hinshaw, for the benefit of Laura P. Hinshaw and Florence Leah Hinshaw, widow and daughter, and next of kin of said Tillman P. Hinshaw, deceased. Amount claimed, $10,000.

Plaintiff alleged that near the station of Wetmore the railway company had constructed a box drain or culvert across its track to allow the water, which otherwise would accumulate on the north side of the track in large quantities, to escape across the track and pass away. The walls of said box drain were composed of railway ties, two on each side, lying down and spiked together. The top of the drain was originally covered with planks or boards, but the board next to the inside of the north rail had become loose and was gone, leaving an open space from ten to twelve inches square. Plaintiff also alleged that next to the east wall of said drain and on the outside of it there was a wash-out or ditch running parallel with the drain across the track, eight to ten inches wide and several inches deep, caused by a larger amount of water accumulating, on account of heavy rains, on the north side of the track, than could escape through the box drain. Plaintiff says that the box drain was so uncovered on the morning of September 11, 1885, and that said wash-out or ditch existed as above described at such time; that the train, on which the deceased was at the time braking, reached Wetmore on said morning about four o'clock and fifty-five minutes, and just before daylight; that the deceased, as the train backed up, went in between the cars on said track to uncouple the cars in order to set out a car that was to be left at Wetmore, and while walking along between the cars waiting a slack so he could pull the coupling-pin, he stepped into the ditch next to said box drain with one foot and through the hole on top of said drain into the drain with the other foot, and that while his foot was in such drain he was caught by the brake beam of the car and thrown down and dragged along the track and crushed to death. And plaintiff says that by omitting to cover up said box drain, and to fill up said ditch, the defendant herein was guilty of negligence in connection with the death of said Hinshaw, and therefore liable for damages under the statute. The defendant below answered, admitting it was a railway corporation duly incorporated according to law, but denied all other allegations in plaintiff's petition, and also

pleaded negligence on the part of the deceased which contributed to his death.    Plaintiff below replied, denying negligence on the part of the deceased.    Trial was had on the issues thus made, December 3, 1887, by the court and a jury, resulting in a verdict for the plaintiff below for the sum of $3,000.    There was a large number of special findings by the jury, some of which supported the general verdict, and some that did not.    The defendant below moved for judgment in its favor upon the special findings of fact, notwithstanding the general verdict.    Then followed a motion to set aside the verdict and for a new trial.    These and other rulings, to demurrers to the petition and to the evidence, in receiving and rejecting evidence, upon an application for a continuance, and in giving and refusing to give instructions, were properly excepted to.    Some of these alleged errors we will notice, and some of them it is unnecessary to consider.

We think the court erred in refusing to give instruction 16, as asked by the defendant below, and not giving in its general instructions something equivalent thereto.    The instruction asked is as follows:

1. Instruction, when error to refuse.

"16. The jury are instructed that if they find from the evidence that the said Hinshaw was guilty of ordinary negligence, which contributed directly, in whole or in part, to the death of said Hinshaw, then the plaintiff cannot recover herein, even though the defendant was guilty of negligence in permitting said track to become and remain out of repair."

This instruction we think correctly states the law, and should have been given, either as asked by the defendant below, or in the general instructions given by the court.    An examination of the instructions given by the court fails to disclose anything that we think can take the place of the instruction refused and excuse the court from giving such instruction. The eighth instruction as given by the court comes nearer stating the law of contributory negligence than any other instruction given, and we think this instruction fails to give a complete statement of the law upon that question, and therefore the instruction asked by the defendant below, which is a

14 — 44 KAS.

correct statement of the law upon that question, should have been given. The instructions of the court only inferentially and incompletely state the law of contributory negligence.

We also think that in the absence of any instruction clearly setting forth the law of contributory negligence, instruction 11 as given by the court is misleading, or there is danger of its being so construed by the jury as to mislead them. The jury are told in this instruction that before the plaintiff can recover, three things must be found, reciting them. In the absence of any well-defined instruction upon the subject of contributory negligence, the jury may have construed this instruction to mean that if they found from the evidence in the case the three things so numbered and recited in this instruction 11, they should then find for the plaintiff anyway, without any regard to the question of contributory negligence.

Again, we find that a number of the special findings of the jury are not only unsupported by any evidence in the case, but are squarely against all the evidence in the case upon the questions to which they relate. All the evidence in the case upon that question shows that the cars to be uncoupled were either the first and second, or the third and fourth, while the jury find the fourth and fifth cars were the ones to be uncoupled. The jury find that Hinshaw was head brakeman on the train, and then in the 107th finding say his duties did not require him to be on the cars near the engine, especially at stations where cars were to be cut out. And yet all the evidence in the case relating to his duties shows that they required him to be on the front car to receive from the conductor or rear brakeman signals for the management of the train and transmit them to the engineer, and to handle the brake to aid the engineer in stopping the train.

The jury were asked in question 77: "During said time, from September 1 to the date of his death, did he frequently, in the daytime, pass over said track and over said culvert in the discharge of the duties as brakeman?" and answered, "No"; while the undisputed evidence shows that he did pass

over said track and culvert frequently, almost daily, and sometimes twice in one day, during the period of time mentioned.

In findings 44 and 45 the jury say that Hinshaw was required in the proper discharge of his duties to go in between the cars while in motion to uncouple them, while all the evidence in the case shows he was not required to go in between the cars to uncouple them while moving, nor for any other purpose. The same jury say in finding 86 that there were no general orders of the company which required Hinshaw in his capacity of brakeman to go in between the cars when they were moving, and in finding 90 they say Hinshaw did not act in obedience to any direction of the conductor of the train in going in between the cars to uncouple them. In finding 36 they say that orders were given Hinshaw to uncouple said cars, while all the evidence on the point negatives such a conclusion.

There are other findings that are against the evidence, but we will not notice them, as they are less material than these, and we have noticed enough to show that the jury made many of their findings in utter disregard of the evidence. When there is a conflict in the testimony of witnesses it is the exclusive duty of the jury to weigh and determine what facts such evidence proves, and when there is any proper evidence which supports the verdict of the jury, such verdict will not be set aside, although the apparent weight of the evidence is against the finding; but where there is no evidence to support a finding, and much more when the finding is against all the evidence in the case, it should be set aside.

2. Verdict or findings, when set aside, when not.

The defendant below saved many exceptions to the rulings of the trial court refusing to admit evidence offered by the said defendant, and has assigned as error such rulings. While we think it is unnecessary to say whether there is reversible error in such rulings, we desire to say we think the rule of evidence was held very rigid against the defendant all the way through the trial.

There is one other matter that we wish to call attention to:

the defendant presented to the court and requested the court to submit to the jury 121 special questions, 33 of which the court refused to submit, which refusal is assigned as error. We do not think the court erred in this. On the other hand, we think the court might with great propriety have cut out and refused to submit a great many that were submitted. There is a good deal of aptness and force in the remark of counsel for defendant in error, when they say that the statute provides for special verdicts, but does not provide for a cross-examination of the jury on the subject of their general finding. It looks too much as though counsel present questions for submission to the jury for the mere purpose of entrapping the jury. The statute does not contemplate any such practice. This matter was referred to in 16 Kas. 190. The court there says:

"Under chapter 91 of the laws of 1874, either party may request of the court to submit to the jury a question as to a particular fact, and if the fact be involved in the issues, and material to the controversy, the court has no discretion, but must submit the question and require the jury to answer."

Again, in 21 Kas. 484. In 25 Kas. 198, the court says: "It is generally error for the trial court to refuse to submit to the jury questions of fact material to the case and based upon the evidence." In 25 Kas. 243, the court says: "A party has a right in a jury trial to have answers returned to specific questions as to material facts"; but the court adds: "This right is not one which enables him to determine what are material facts and what questions must be answered. He may present any number of questions for submission, as any number of instructions, but it is the duty of the court to determine what in the one case shall be submitted, as in the other what shall be given." In 39 Kas. 204, another phase of this question is discussed.

An examination of all these authorities discloses that the law upon this subject is settled by this court as follows: First, a party has a right to have special questions submitted to a jury where the questions are material under the is-

sues and the evidence. Second, that it is the duty of the court to determine what questions are material under the issues and the evidence, and to reject all questions not material. Third, when questions are submitted the court must require the jury to return a direct and positive answer thereto. It follows that the trial court should pursue such a course touching the submission of special questions to the jury as will limit the questions submitted to material questions, and not permit the changes to be rung on them, resulting in a repetition thereof.

We recommend that this case be reversed, and remanded for a new trial.

By the Court: It is so ordered.

All the Justices concurring.