## URIAH DULL v. D. F. DUMBAULD.
### No. 238.

1. PRACTICE— *Admission of Incompetent Evidence—Error Waived, When.* Error in the admission of incompetent evidence relating to an offer of compromise is waived where it appears that the party alleging such error thereafter voluntarily testified in his own behalf concerning such offer of compromise.

2. EVIDENCE— *Agency, Proof of— Instruction.* Where the existence of an alleged agency depended upon a large number of facts, it was proper for the court to refuse an instruction to the effect that the relation of principal and agent could arise only out of an express agreement supported by a good and valuable consideration.

3. SPECIAL FINDINGS— *Voluminous Facts—Discretion of Court.* Some discretion necessarily rests with the trial judge in respect to the submission of particular questions of fact to a jury; and where it appears from the general nature of the questions refused that to answer them a statement of numerous facts would be necessary,

Dull v. Dumbauld.

and that substantially all of the facts called for by the questions refused were given in answer to other and more specific questions, *held*, that it was not error to refuse to submit such questions.

Error from Coffey district court; W. A. RANDOLPH, judge. Opinion filed January 18, 1898. Affirmed.

*Johnson & Johnson*, for plaintiff in error.

*Manchester & Allen*, and *Graves, Lambert & Dickson*, for defendant in error.

The opinion of the court was delivered by

MILTON, J.: To review a judgment in the sum of $321.97 rendered against him in the district court of Coffey county in favor of defendant in error, D. F. Dumbauld, the defendant below, Uriah Dull, brings these proceedings in error.

The petition alleged substantially the following: That Dull, as agent for Dumbauld, undertook to buy 215 head of cattle for the latter, the agreement being oral; that it was understood that a reasonable compensation should be paid said Dull, but no definite amount had been fixed; that in pursuance of the agreement Dull bought 215 head of cattle, and brought them from Emporia, in Lyon county, to a pasture near Waverly, in Coffey county, and there turned them over to Dumbauld, who paid therefor $25.50 per head, and an additional twenty-five cents per head as compensation to Dull for his services; that Dull represented that he had undertaken to pay $25.50 per head for the cattle, and that Dumbauld, relying fully upon that statement, paid to Dull the price he demanded, with the understanding that the money should be paid by the latter to the party in Lyon county from whom the cattle had been bought; that long afterwards Dumbauld discovered that his

agent, Dull, had deceived and defrauded him, by reason of the fact that, while he had represented the cattle to have cost $25.50 per head, he had in reality paid only $20.50 per head for them; and that Dull had refused to return the money thus fraudulently obtained, upon demand being made therefor. Judgment in the sum of $1382.50 was prayed for. Dull's verified answer contained (1) a general denial; (2) a specific averment that he had sold to Dumbauld 215 head of cattle at $25.75 per head, and that there was still due him on said sale the sum of $36.25; and, (3) a positive denial of the alleged agency. The reply, a general denial, was unverified.

The evidence shows the following state of facts: Dull and Dumbauld were cousins. Dull said to Dumbauld that he had bought some nice cattle at Emporia and was going there to buy more. Being asked by Dumbauld to buy 100 head for him, Dull agreed to do so. No money was paid to Dull by Dumbauld until after the cattle were bought and driven from Lyon county to a pasture in Coffey county. Dull paid $1000 down and the balance before Dumbauld paid him. Dull knew that Dumbauld would have to borrow the money, and after they went to the pasture it was agreed that, if Dumbauld could borrow the money in Kansas City, as he expected to do, he would take the 215 head at $25.75, which included twenty-five cents per head as commission to Dull for buying the cattle, Dull representing that they had cost $25.50 each. Three days later Dumbauld went to Kansas City to procure the money, Dull being well aware of such fact. During Dumbauld's absence, Dull mortgaged the cattle to a bank at Burlington and thus procured the balance due, which he immediately paid to the party in Lyon county from whom he had

purchased the cattle. After an absence of two days, Dumbauld returned with $5500, and on the day of his return paid the amount to Dull and received the cattle upon the basis of their prior understanding. The record does not show what became of the mortgage Dull had given on the cattle to secure the balance of the purchase price. It appears, however, that Dumbauld mortgaged the cattle to procure the $5500. The price paid by Dumbauld was $25.75 per head, less $36.25, the amount claimed by Dull in his answer to be still due him. Some months later Dumbauld, having learned that Dull had not paid the price he claimed to have paid for the cattle, accompanied by one Charles M. Christy, an attorney, went to Dull's house and demanded a settlement. In the course of a conversation lasting several hours, Dull offered to pay $300 in settlement of the matter. Dumbauld and Christy testified that this was done after Dull admitted that he had paid but $22.50 per head for the cattle, and upon the basis of his claim that he had acted for Dumbauld in the purchase of only 100 head of the cattle. Dull testified that litigation was threatened in respect to two notes on which he was surety for Dumbauld, and that he offered to pay to the latter all that he had made on the sale of the 100 head — that is, $300 — on condition that Dumbauld would give security to him as to said notes; and that he did not make any offer to compromise on any other terms. The evidence shows beyond dispute that the price Dull actually paid for the cattle was $22.50 per head. A verdict in the sum of $332 was returned in favor of Dumbauld, and the jury made a large number of findings of fact, one being that Dull had acted as the agent of Dumbauld in the purchase of only 100 head of cattle. The specifications of error are numerous.

Two relate to the action of the court in sustaining certain objections to questions asked by the defendant on the cross-examination of certain witnesses.  From an examination of the record, we think the rulings were not so far improper as to justify a reversal.

The third and fourth specifications are that the court erred in admitting the testimony of Dumbauld and Christy in relation to an offer of settlement made by Dull to Dumbauld a day or two before suit was commenced, it being claimed by plaintiff in error that an offer to compromise or an admission made during or in consequence of an effort to effect a compromise is inadmissible.  The facts in this case will hardly permit the application of that doctrine.  As we have already stated, Dull testified that he did not offer to compromise, but that he did offer to repay all he had made on the 100 head of cattle if Dumbauld would secure him in regard to certain notes.  Since the defendant himself denied making an offer to compromise plaintiff's claim, while admitting that he made a conditional offer at the time referred to, the error, if any, in the admission of testimony concerning an offer to settle the matter of difference is immaterial.  Counsel say that by the verdict of the jury Dumbauld obtained the amount, with interest, which he and Christy stated Dull had offered in settlement of Dumbauld's claim ; and that it is plain the jury was influenced by such testimony.  As the amount of the verdict is the same as the amount, with interest, which Dull says he offered to repay to Dumbauld under certain conditions, but not as compromise, it might be said that the jury were guided by the latter statement.  In any event, we think the verdict and judgment should stand so far as this objection is concerned.

The fifth assignment alleges error in overruling de-

Dull v. Dumbauld.

fendant's motion for judgment on the special findings of fact. We have examined these in connection with the evidence very carefully and think the findings are consistent with the evidence and with the verdict.

The sixth, seventh, eighth, ninth, tenth and eleventh assignments relate to the action of the court in giving or refusing instructions. The instructions as a whole stated the law very clearly and fairly, in view of the evidence. Particular complaint is made that the court refused to give an instruction asked for by the defendant to the effect that the relation of principal and agent in this case could arise only out of an express agreement, supported by a good and valuable consideration. The instruction was properly refused, and the court correctly told the jury that to establish the fact of an agency it was not necessary to show any specific or particular language which was made use of by the parties, but it was sufficient if such appeared under the evidence to have been the understanding of the parties; for the evidence, by what seems to us a clear preponderance, shows that Dull's actions and words after he placed the cattle in the pasture in Coffey county were consistent only with a recognition of an agency for Dumbauld which he had undertaken before the cattle were purchased. Certainly he might have given up that agency after he had bought the cattle with his own money, but if he allowed it to stand after the cattle were purchased, and received compensation for his services as agent, the court was justified in leaving the question as to the existence or non-existence of such agency to be determined from all the evidence in the case. The general verdict of the jury settled that question.

Complaint is made of the following, which is the first paragraph of the general instructions :

" The evidence shows that after this alleged arrange-

ment the defendant went to the city of Emporia and purchased 215 head of cattle, and brought them to a place near Waverly, Kan., and turned them over to the plaintiff, and the plaintiff paid therefor $5500.''

Counsel say that this in effect declares that the cattle were purchased for plaintiff. As the court, in another instruction, stated to the jury that the evidence showed that Dumbauld expected to get 100 head of cattle when Dull went to Emporia, we think the jury could not have understood the instruction we have quoted in the way counsel now read it. The refusal of the court to allow the jury to answer special questions Nos. 2 and 17 is also assigned as error. In finding No. 1, the jury stated that Dull had made an agreement with Dumbauld to purchase cattle for the latter in Lyon county. Question 2 asks the jury to state that agreement. The record does not indicate the court's reason for refusing to submit these questions. It is evident that the answer to question No. 2 would have required a statement of a large part of the evidence. Question No. 17 related to the terms and conditions on which Dull let Dumbauld have the 215 cattle, and its answer would have involved a statement of a large number of facts. Some discretion necessarily rests with the trial judge in respect to the submission of special questions of fact. We cannot say that there was an abuse of that discretion in this case. The statute provides that the court shall, at the request of parties, direct the jury "to find upon particular questions of fact." The supreme court, in *City of Wyandotte v. Gibson*, 25 Kan. 236, declared that it is the duty of the trial court to determine what questions are material and what shall be submitted. It also appears from the record that substantially all of the "particular facts" called for by the aforesaid questions were found by the jury in an-

swer to other and more specific questions. We have considered all the errors assigned in this case. They have been ably presented by the eminent counsel for plaintiff in error. Upon the whole record, we have concluded that the judgment of the trial court is correct, and it is accordingly affirmed.