The Wichita & Western Railway Company v. Gustave Koch.

#### No. 347.

Railroads—*Contract of Shipment—Notice of Claim for Damages.* A railway company unloaded a car-load of fat hogs which it had received for shipment from Cheney, Kan., to Kansas City, Mo., and placed them in the stock-yards at Wichita after the animals had been exposed to a very severe storm for several hours while the railway company was endeavoring to return them from Wichita to the shipper. Eighteen hogs were dead at the time the car was reloaded at Wichita by the railway company to be forwarded to Kansas City, Mo., where they were delivered to the shipper's agent. *Held*, that the written notice provided for by the contract of shipment was not a prerequisite to the right to recover the value of the hogs which died before such reshipment.

Error from Sedgwick district court ; C. Reed, judge. Opinion filed March 20, 1899. Modified.

*F. W. Bentley*, for plaintiff in error.
*Sankey & Campbell*, for defendant in error.

The opinion of the court was delivered by

MILTON, J. : The defendant in error has twice recovered judgment against the plaintiff in error for loss and damage resulting from the latter's alleged negligence in relation to a car-load of fat hogs, numbering sixty-five, and weighing, when shipped, 17,000 pounds, which were shipped from Cheney, Kan., on January 7, 1886, under a written contract whereby the railroad company undertook to deliver the hogs to Koch's agents in Kansas City, Mo.   The first judgment was reviewed in the case of *W. & W. Rly. Co. v. Koch*, 47 Kan. 753, 28 Pac. 1013, and was reversed for the reason that notice of his claim for damages had not been given by Koch in accordance with the terms of the shipping contract, which required such notice to be given in writing to some officer of the railroad company, or to its nearest station agent, "before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same to said party of the second part, and before such stock is mingled with other stock."

On the second trial, the jury, as appears from their special findings, allowed the sum of $143.81 for the loss of hogs frozen to death ; $24.89 for "loss of hogs crippled and frozen " ; $25.08 for "loss on shrinkage through suffering " — the foregoing being the items of damage alleged in the plaintiff's bill of particulars, which stated a good cause of action for damages by reason of negligence on the part of the railroad company.   It was alleged that eighteen of the hogs died on account of the negligence of the defendant company.   It seems probable that on the second trial further testimony regarding the handling of the hogs before they were shipped from Wichita was produced in addition to that introduced at the first trial.

The car reached that city in the forenoon of January 7, but was not forwarded over the connecting line, the Atchison, Topeka & Santa Fe railroad, as the latter refused to receive it owing to a snow blockade. What proved to be a storm of great severity was then beginning, and the superintendent of the Wichita & Western Railroad Company decided to send the car of hogs back to Cheney, which was accordingly attempted in the afternoon of that day. It was found to be impossible to make the trip because of snow-drifts, the engine "dying" in a snow-filled cut and requiring to be dug out by shovelers. About twenty-four hours after the car had been started toward Cheney it was returned to Wichita, the animals having been without food or shelter in the meantime, except such shelter as an open stock-car afforded. The hogs were then taken from the car by the employees of the railroad company and placed in stock-yards belonging to the Atchison, Topeka & Santa Fe Railroad Company. These stock-yards had no roof and there were openings between the boards forming the sides. Snow had fallen and drifted in and there was no bedding for the hogs. Eight or nine of them were dead at the time the car was unloaded, and fully one-third of the whole number, sixty-five, were more or less frozen.

On the 11th of January, Koch went to Wichita at the request of the superintendent of the defendant company to confer in regard to the hogs. He visited the stock-yards and saw his hogs there. He observed that eighteen of them were dead and that a considerable number of others were badly frozen. He then went to the superintendent and demanded that the railroad company have the hogs weighed and pay him the amount of damages to which he was entitled. He urged that they be sold by the company in Wichita,

Railway Co. v. Koch.

and wanted to have the whole matter settled then and
there.   The superintendent declining to do as Koch
desired, the latter left, after stating that he would
have nothing further to do with the shipment of the
hogs.   Thereafter, and on the same day, the railroad
company shipped the hogs, living and dead, except
two, over the Atchison, Topeka & Santa Fe rail-
road, and on the 13th delivered them in Kansas
City to Keys & Co., the consignees named in the
shipping contract.   Keys & Co. immediately sold the
hogs and promptly thereafter remitted the proceeds of
the sale, together with a statement of account, to Koch,
who duly received the same.   Keys & Co. paid the
freight charges on the car from the money received
from the sale of the hogs.   Written notice of his claim
for damages was not given by Koch until January 25,
twelve days after the hogs had been sold in Kansas
City.   The errors complained of relate to the admis-
sion of incompetent testimony and to instructions
given and refused.

   The contention as to improper admission of testi-
mony is well taken, as it appears that Koch was per-
mitted to testify as to the contents of the statement
made to him by Keys & Co., his agents, concerning
the weight and value of the hogs in Kansas City.
The error, however, affects only the items as to loss
by shrinkage and loss from freezing and crippling.

   The defendant asked for an instruction to the effect
that if the jury found that a written notice had not
been given in accordance with the terms of the ship-
ping contract they should return a verdict for the
defendant.   This instruction was refused, and defend-
ant duly excepted.   The court gave an instruction
which stated that the strict letter of the contract as
to notice should not be applied to a case where the

shipper did not accompany the stock, such instruction being in part in the language of the opinion in the case of *Goggin v. K. P. Rly. Co.*, 12 Kan. 416. In another instruction the jury were told that if they found certain facts, then a written demand on the agent of the connecting carrier in Kansas City was not necessary. The principal facts so required first to be found were : That the plaintiff did not accompany the stock when shipped ; that the damage to the stock was done before it was reloaded by the defendant at Wichita ; that the plaintiff refused to receive it back from the defendant after it was injured, but, instead, demanded settlement of the damages he had suffered ; and that the defendant company had full knowledge of the condition of the hogs before the reloading at Wichita. This instruction was excepted to, but is not referred to in the brief of the plaintiff in error.

As to the eighteen dead hogs for which the jury allowed $143.81, it is clear that the jury must have found the facts as stated in said instruction, as the testimony amply justified such findings. The hogs were dead before the car was reloaded at Wichita, and the superintendent of the Wichita & Western Railroad Company was apprised of the condition of the hogs before the reshipment. Koch had declined to deal further with them. The reloading and reshipment were wholly the acts of the railroad company. Even if it be said that Koch afterward put himself in the former relation to the shipment, it cannot be said that he thereby became charged with the responsibility of giving notice to the railroad company of a fact of which its superintendent had actual knowledge. The purpose of giving a written notice of the claim for damages in such a case has been stated by the supreme court to be that the railroad company " may

have a fair and reasonable opportunity of examination and inspection of the condition of the live stock transported under its management before it shall be placed beyond its reach or beyond the possibility of certain identification.'' (*A. T. & S. F. Rld. Co. v. Temple*, 47 Kan. 7, 27 Pac. 98.)   Under the facts of this case, the only purpose a written notice of the claim for damages could have served would have been to give the railroad company an opportunity to settle the claim without suit.   No inspection or investigation as to the condition of the eighteen hogs that had perished was necessary.   The company already had full knowledge thereof.

Before the hogs were shipped by the Wichita & Western Railroad Company from Wichita over the line of the connecting carrier the plaintiff's right of action for the loss of the eighteen hogs had accrued. We hold, therefore, that written notice of the claim for damages, as provided for in the contract, was not required, so far as the right of recovery for the eighteen hogs is concerned.   As to the other two items, loss by shrinkage and loss by freezing and crippling, it is not clear that the damage in these respects had all occurred before the hogs were shipped from Wichita.   The first instruction, to which we have referred, even if erroneous, was immaterial.   It does not seem that the jury could have been influenced by it to reach a different decision from that which they would have reached in its absence.   The incompetent testimony, as well as the instruction mentioned, relates to items other than that for the value of the eighteen dead hogs.   It thus appears that a large part of the amount recovered was proper under the facts and under the law applicable thereto.   But the errors mentioned will require a reversal of the judgment, unless the defend-

ant in error consents to a modification thereof by strik-
ing from the judgment $24.89 for "loss of hogs
crippled and frozen," $25.08 for "loss by shrinkage,"
together with interest on such items at six per cent.
per annum from July 26, 1887.

The case will therefore be remanded to the district
court of Sedgwick county, with instructions that if the
defendant in error, within such reasonable time as
shall be fixed by said court, assent to and accept the
foregoing modification of the judgment herein, then the
said judgment, as so modified, will be affirmed, and
the costs in this court be equally divided between the
parties ; otherwise the judgment as heretofore entered
in favor of the defendant in error shall be reversed
and the cause shall be set down for a new trial in the
said district court.