THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
v. J. H. FRY.

No. 14,607.   (87 Pac. 754.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Shipment of Live Stock—Notice of Loss—Decline in Market.* A live-stock shipping contract contained a stipulation that as a condition precedent to his right to recover for any loss or injury to the cattle resulting from the carrier's negligence, including delays, the shipper should give notice in writing before the cattle were removed from pens at destination. *Held,* that the words "including delays" cannot be regarded as having reference to a loss resulting from a decline in the market occasioned by the carrier's negligent delay in transportation.

2. —————— *Instructions—Measure of Damages.* In an action against a carrier to recover for loss from a decline in the market price occasioned by negligent delays in the transportation of cattle the measure of damages is the loss sustained by the decline of the market where the cattle were delivered, and an instruction that the jury should consider the price the cattle subsequently sold for at another market to which they were reshipped over another road, and the decline at that market on a different day, is erroneous.

Error from Woodson district court; OSCAR FOUST, judge.   Opinion filed November 10, 1906.   Reversed.

STATEMENT.

IN an action against the Missouri, Kansas & Texas Railway Company J. H. Fry sought to recover damages for an alleged delay in the shipment of 107 head of cattle from Neosho Falls to Kansas City, Mo.   The cattle were loaded in five cars, two of which contained forty-four head consigned to a commission company at Chicago, with the privilege of the Kansas City market. The remaining cattle were consigned to the same commission company at Kansas City.

The contracts for the transportation of the cattle were in writing, copies of which were attached to and made a part of the petition.   Across the face of the

contract covering the forty-four head consigned to Chicago were stamped the words "privilege of Kansas City market," and it was alleged that by this provision the shipper had the right, upon arriving at Kansas City, to elect whether to unload there and dispose of the cattle or have them carried by the railway company to Chicago at the through tariff rate from Neosho Falls, which was twenty-eight and one-half cents per hundred, and that in the event he elected to sell the cattle at Kansas City he was to pay only the tariff rate from Neosho Falls to Kansas City, which was eleven cents.

The cattle were shipped from Neosho Falls on the 26th day of January, 1904, and it was alleged that they should have arrived in Kansas City on the morning of the 27th in time for that day's market; that by reason of the negligence of the railway company the cattle failed to reach Kansas City until the afternoon of the 27th, too late for the market of that day, and too late for the forty-four head of cattle to reach Chicago in time for the market there on the 28th; that on the arrival of the cattle at Kansas City the market there had suffered a decline which continued on the 28th; and that plaintiff, in order to realize the highest market price on all the cattle, reshipped the 107 head on the evening of the 27th to Chicago over another road, and, failing to reach Chicago in time for the market of the 28th, was obliged to hold the cattle until the 29th, when he sold all at a loss occasioned by the decline in the Chicago market.

Damages were also claimed by reason of additional freight charges on the forty-four head of cattle consigned to Chicago. Plaintiff claimed that he paid the sum of the rates (eleven cents to defendant and twenty cents to the other railway company) and asked damages for the difference between the through tariff rate and the sum paid, which it was agreed amounted to $12.32. The answer was a general denial.

The only evidence on the trial was that offered by

plaintiff, from which it appears that the cattle did not arrive at Kansas City until after noon of the 27th, when the market of that day had closed, and that they should in the ordinary course have arrived there in the morning; that this delay was occasioned by the negligence of the railway company; that plaintiff caused all the cattle to be unloaded and fed at Kansas City, and late on the afternoon of the same day, upon advice of his commission company, reshipped all the cattle to Chicago over another road, paying therefor the twenty-cent rate from Kansas City to Chicago; and that his commission company had already paid to defendant company when the cattle were delivered at Kansas City the eleven-cent rate from Neosho Falls. It was admitted that no notice was given defendant company of any election to have the forty-four head of cattle carried to Chicago and that no demand was made that defendant company should forward them.

There was evidence showing a decline in the market at Kansas City on the 28th below the price of the 27th. Some witnesses estimated this decline at from fifteen to twenty cents, others at from twenty-five to thirty cents, per hundred. There was evidence also showing a decline in the Chicago market between the 28th, when it was claimed that but for the delay at Kansas City the forty-four head should have arrived there, and the 29th, when all the cattle were sold.

The jury returned a verdict in favor of plaintiff for $333.32. In answer to special questions they stated that they allowed for damages occasioned by decline in the market $321, which was arrived at by allowing twenty-five cents per hundred pounds for decline in price, based upon an average weight of 1200 pounds per head for the 107 cattle. They also allowed for additional freight paid on the forty-four head the sum of $12.32.

From the judgment the defendant prosecutes this proceeding in error.

*John Madden, W. W. Brown,* and *Lamb & Hogueland,* for plaintiff in error.

*G. R. Stephenson,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: Three assignments of error are urged: (1) Overruling the demurrer to plaintiff's evidence; (2) error in instructions; (3) denying the motion for a new trial. The first error, the overruling of the demurrer to the evidence, is based wholly upon the contention that the written contracts, which were made parts of the petition, contained certain provisions which under the admitted facts and evidence prevented a recovery by plaintiff. The contracts are what are known as "special live-stock contracts," and contain the following provision:

"The shipper further expressly agrees that as a condition precedent to his right to recover any damages for any loss or injury to said cattle resulting from carrier's negligence as aforesaid, including delays, he will give notice in writing to the conductor in charge of the train or the nearest station- or freight-agent of the carrier on whose line the injuries occur before said cars leave that carrier's line or before the cattle are mingled with other cattle or removed from pens at destination. In his notice he shall state place and nature of the injuries, to the end that they may be fully and fairly investigated, and said shipper shall, within thirty days after the happening of the injuries complained of, file with some freight- or station-agent of the carrier on whose line the injuries occurred his claim therefor, giving the amount. Shipper's failure to comply with the requirements of this section shall absolutely defeat and bar any cause of action for any injuries resulting to said cattle as aforesaid."

Another provision is as follows:

"No agent of this company has any authority to waive, modify or amend any of the provisions of this contract, or to agree to ship said cars by any particular train, or to reach any particular market . . . on any particular day, which the carrier hereby expressly declines to do."

The second provision quoted may be disposed of in a few words. There was evidence that the delay in transporting the cattle was caused by the negligence of defendant. That the railway company could not by the terms of this provision limit its liability for damages caused by its own negligence is so obvious as not to need the citation of authorities.

It was admitted that no written notice of loss was given under the first provision quoted, and defendant contends that the giving of this notice was a condition precedent to the right to maintain the action. Indeed, this is the main contention here. Aside from a claim of error in certain instructions, which will be considered hereafter, it is upon this that a reversal is sought. This question has been settled adversely to the contention of defendant, and is no longer an open one. (*Railway Co. v. Poole,* 73 Kan. 466, 87 Pac. 465; *Cornelius v. Railway Co., post.*)

The only apparent material difference in the contract in those cases and the one here is that this contains the words "including delays," so that it reads "for any loss or injury to said cattle resulting from carrier's negligence as aforesaid, *including delays,* he will give notice," etc., and the further difference that in the two cases *supra* the stipulation for a notice of a claim for damages was for any loss or injury to said stock *"during the transportation thereof,"* while the one under consideration, instead of the words in italics, reads, "any loss or injury to said cattle *resulting from carrier's negligence as aforesaid."* It is, however, so apparent from the whole contract that when loss or injury is mentioned reference is had to the physical condition of the cattle as affected by something which might occur during transportation that the absence of the phrase is of no consequence. It is not clear just what is meant by the words "including delays," unless they are used in reference to the physical condition of the stock as affected by delays. The purpose cannot be said with reason to be to provide for notice of a loss re-

sulting from a decline in the market, for it would be manifestly unreasonable to require the shipper to give notice of something which might or might not happen, depending upon a variety of circumstances and conditions which he could not judge of until after his interests might require the removal of the stock from the pens at destination. He might see fit, before the market of the next day, to ship his stock back home or to some other market and yet not lose his right to maintain an action for any damage resulting from a decline in the market and caused by the company's negligent delay.

The contract provides that the notice shall state the place and nature of the injuries, "to the end that they may be fully and fairly investigated." The reasons for such notice are obvious when applied to injuries received by cattle in transportation, as was held in *Sprague v. Mo. Pac. Rly. Co.*, 34 Kan. 347, 8 Pac. 465, and *Goggin v. K. P. Rly. Co.*, 12 Kan. 416, but are absolutely wanting when applied to a loss resulting from a decline in the market price. It was said in the Poole case, *supra,* that "such contracts and the notices required by them must be reasonable. Agreements of this character are viewed with some strictness by the law, and unless the exemption from liability is clearly expressed it should not be allowed." (Page 468.)

No possible inconvenience could be suffered by the railway company through failure to receive such notice. It already knew as well as the shipper that the transportation and delivery had been delayed, the exact time of the delay, and that the market for that day was over. Whether the market the next day would show a rise or decline—a benefit or loss to the shipper —was a matter of pure speculation, upon which the railway company was perhaps as competent to make a guess as the shipper. Suppose the market in fact should decline and the shipper suffer a loss: the railway company could not reasonably claim that the removal of the cattle from the pens at destination be-

fore notice of such loss deprived the company of any advantage or protection, or of full opportunity to investigate the facts. In principle, therefore, nothing in this contract distinguishes it from the one in the Poole case or that of the Cornelius case. The demurrer to the evidence was properly overruled.

Most of the alleged errors in the instructions are disposed of by what has been said with respect to the terms of this contract. The instructions generally seem to have been prepared carefully and to state the law applicable to the facts with admirable clearness. We find, however, that, possibly owing to the wrong theory upon which plaintiff tried his case, two of the instructions were erroneous. One authorized the jury to allow as an item of damages the additional freight paid on the shipment of the forty-four head of cattle to Chicago. Plaintiff admitted that no demand had been made that defendant company should forward these cattle to Chicago, under contract or otherwise. When the railway company delivered all the cattle to the commission company at Kansas City its contract was certainly ended so far as concerned the three car-loads consigned to Kansas City, and equally so with reference to the two car-loads consigned to Chicago, unless notified within a reasonable time of plaintiff's election to have them carried by it to Chicago. It was still liable for any damage resulting from its negligent delay, but its contract for delivery was ended, subject to this liability. Plaintiff, after the cattle had been delivered, and without any notice to the company or demand that it should forward the cattle, saw fit to reship all of them to Chicago over another road. This gave him no right whatever to recover the additional freight paid on the forty-four head of cattle. This error itself would not call for a reversal, because the amount allowed for this item of damages was stipulated between the parties and only the question whether plaintiff actually paid it was submitted to the jury. The slight

excess of $12.32 in the judgment could be easily remedied, if that were all.

Another and a more serious error occurred in the instructions. The jury were instructed that the measure of plaintiff's damages was the loss suffered by the decline in the Chicago market. Plaintiff admitted that he did not know whether or not he lost more by shipping to Chicago than he would have lost by staying in Kansas City for the next day's market. He testified as follows:

"Ques. Then, from what we have learned concerning the market in Kansas City the day before [the 28th], you could have done better in Kansas City? Ans. Well, that is something I don't know. I shipped to Chicago to better my condition, on the advice of my commission men.

"Q. You took your chances on getting a better market? A. Certainly; I have took my chances every time I shipped.

"Q. You don't want the railroad company to take your chances on your getting a better market in Chicago? A. No, of course; but I simply shipped through because I was delayed and was too late for the market in Kansas City and the prospect was it would be still worse the next day, and my commission men advised me to ship on to Chicago that I might strike a better market Friday, the day I would naturally be on the market."

He might, if his commission company had so advised, have shipped these cattle to Liverpool and with equal propriety have claimed that the measure of his damages was the loss occasioned by a later decline there. The measure of his damages was clearly the loss occasioned by the decline in the market at Kansas City resulting from the negligent delay in arriving there. It is impossible to ascertain from the verdict or the special findings which market price was considered in determining that the loss by the decline amounted to twenty-five cents per hundred. But plaintiff introduced in evidence the returns of the sale at Chicago, and, while evidence was given of a decline at both mar-

kets, the basis necessarily involved in determining the loss was the amount the cattle sold for at the wrong market on the wrong day. The court instructed the jury that if they found plaintiff entitled to recover "he would be entitled to recover the difference between the market value of the steers at the usual time they were to be delivered in Chicago, Ill., and Kansas City, Mo., and the market value of the steers on the day they were actually sold." This was error, for which the cause is reversed and remanded for another trial.

All the Justices concurring.