PATTERSON *et al.* v. MISSOURI, K. & T. RY. Co.

No. 2150. Opinion Filed September 14, 1909.

(104 Pac. 31.)

1. CARRIERS—Carriage of Live Stock—Notice of Loss. Hogs that died in the car, and are removed therefrom in transit by the employees of the railway company, are not within a clause of the contract of shipment requiring the shipper, as a condition precedent to his right to recover any damages for any loss or injury to said stock resulting from the carrier's negligence, to give notice in writing to the conductor in charge of the train or to the nearest station or freight agent of the carrier on whose line the injuries occur before said car leaves that carrier's line, or before the live stock are mingled with other live stock or removed from pens at destination.

2. PLEADING—Appeal and Error—Issues, Proof and Variance—Waiver. If proof is offered of an issue or of a single fact different from that stated in the pleadings, but not amounting to a failure of proof, and no objection is made by the adverse party, it is of no consequence. The objection is not available in the reviewing court. It is too late then.

3. PLEADING—Variance—Materiality. No variance between the allegations in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits.

4. CARRIERS—Injury to Freight—Exemption from Liability—Burden of Proof. If the carrier seeks to escape liability on the ground that the loss of or injury to the goods is one excepted by a valid special contract, he has the burden of proving, not only

the making of such special contract, but also that the loss or injury for which the action is brought falls within a specified exception contained in such special contract.

5. **NEGLIGENCE—Questions for Jury—Contributory Negligence.** Negligence and contributory negligence are usually questions for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.

6. **CARRIERS—Carriage of Live Stock—Care of.** If the shipper specially agrees, as a part of the contract of transportation, that he or his agents will care for the animals and attend to feeding and watering them, the carrier is thereby relieved from liability so far as opportunity of caring for, feeding, and watering the animals is afforded him. And, if damages result from the failure of the shipper under such circumstances to have the animals cared for, he cannot hold the carrier responsible. Nevertheless, if the carrier is aware that no one is accompanying the animals to care for them, his duty to give them proper attention is the same as though no contract for care by the shipper has been made.

(Syllabus by the Court.)

*Error from District Court, Pawnee County; Bayard T. Hainer, Judge.*

Action by J. W. Patterson and another against the Missouri, Kansas & Texas Railway Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

*Poe, Biddison, Campbell & Eagleton,* for plaintiffs in error.— Citing: *Potter v. Express Co.,* 4 S. C. 135; *Railway Co. v. Ball* (Tex.) 16 S. W. 441; *Railway Co. v. Ayers* (Ark.) 38 S. W. 513; *Central R. R. & Banking Co. v. Pickett* (Ga.) 13 S. E. 750; *Railway Co. v. Koch,* 56 Pac. 538; *Railway Co. v. Fry* (Kan.) 87 Pac. 754; *Wheeler v. Oceanic, etc., Co.,* 125 N. Y. 155.

*Clifford L. Jackson, John E. DuMars* and *Horace Speed,* for defendant in error.—Citing: *Shantz v. Oakman,* 163 N. Y. 155; *Mann v. Burchard,* 40 Vt. 326; Hutchinson, Carriers (3d Ed.) secs. 1334-9, 177 *et seq.*; 1 Chitty, Pleadings 309; *Camp v. Hartford Co.,* 43 Conn. 333; Angell on Carriers, secs. 440-445; *Railway Co. v. Daggett,* 87 Tex. 322; *Mo. Pac. Ry. Co. v. T. & P. Ry. Co.,* 41 Fed. 913; *Railway Co. v. James* (Ga.) 45 S. E. 223;

*New Jersey Co. v. Bank,* 6 How. 384; 4 Elliott on Railroads, sec. 1549.

KANE, C. J. This was an action for damages, commenced by the plaintiffs in error, plaintiffs below, against the defendant in error, defendant below, for a failure to deliver certain hogs which by the terms of a written contract the defendant agreed to transport from Jennings, Okla., to the city of St. Louis, Mo. The petition alleges, in substance, that the defendant, a common carrier, failed to deliver 20 head of hogs out of a car of 90 hogs shipped by plaintiff over the defendant's railroad from the town of Jennings, Okla., to the city of St. Louis, Mo., and prays for damages occasioned by such nondelivery in the sum of $251.56. The plaintiff attached to his petition a purported copy of the special live stock contract under which the hogs were shipped. The answer, to which is also attached and made a part thereof a purported copy of the shipping contract between the parties, consists of a general denial and several special defenses, of which we will notice only those called to our attention by the briefs of counsel. The allegations of the answer necessary to note are to the effect that the defendant under the terms of said contract let to said plaintiff one car, as stated by plaintiff in his petition; that his agents, servants, and employees loaded into said car 90 head of hogs, which number overloaded the capacity of said car; and that by reason of said car being overloaded a large number of hogs, to wit, the number of 20, died between the town of Jennings, Okla., and the town of Sedalia, in the state of Missouri, and that said 20 head of hogs were removed by defendant's agents and employees at the town of Sedalia, and that said removal of said dead hogs was necessary to the safe transportation of the remaining 70 hogs, and that said carrier carried the said last-mentioned 70 hogs to their destination promptly and safely, and that the last-mentioned 70 hogs were in good condition upon reaching destination; that the said car was carefully handled by said defendant, and the death of said hogs was due solely to the action of plaintiff in negligently and carelessly over-

loading and crowding the same. For reply the plaintiff filed a general denial.

Upon the issues thus joined the cause was tried and submitted to a jury, and, after the evidence was all in, the court peremptorily instructed the jury to return a verdict for the defendant upon the grounds, first, that the evidence was insufficient to show that any claim had been presented to the railroad company according to the terms of the contract; and, second, that no negligence was shown on the part of the railroad company. The jury returned a verdict in accordance with the instructions of the court, upon which judgment was entered, and the cause was in due time taken to this court by petition in error.

The clause of the contract pertaining to giving notice of any loss or injury reads as follows:

"The shipper further expressly agrees that as a condition precedent to his right to recover any damages for any loss or injury to said live stock resulting from carrier's negligence as aforesaid, including delays, he will give notice in writing to the conductor in charge of the train or to the nearest station or freight agent of the carrier on whose line the injuries occur before said car leaves the carrier's line or before the live stock are mingled with other live stock or removed from pens at destination. In this notice he shall state place and nature of the injuries to the end that they may be fully and fairly investigated, and said shippers shall within 30 days after the happening of the injuries complained of file with some freight or station agent of the carrier on whose line the injuries occurred his claim therefor, giving the amount. Shipper's failure to comply with the requirements of this section shall absolutely defeat and bar any cause of action for any injuries resulting to said live stock as aforesaid, and no suit shall be brought against any carrier, and only against the carrier on whose line the injuries occurred, after the lapse of 90 days from the happening thereof, any statute or limitation to the contrary notwithstanding, and no damages can be recovered except those set forth in the required notice and claim."

Another clause of the contract provided:

"The carrier shall only be liable for such damages as may result to said live stock from the negligent transportation or hand-

ling of said cars after they are delivered to it as aforesaid at point of shipment and intermediate points where they have been unloaded by shipper for any purpose, and the shipper shall bear all damages resulting from his negligent doing or failure to do any of the things which he hereby contracts to do, or from the negligence of any of his servants."

The case at bar as disclosed by the pleadings does not fall within that class of cases wherein it has been held that the notice required by the contract is a condition precedent to recovery. The purpose in giving such notice is that the railway company may have a fair and reasonable opportunity to make an examination and inspection of the live stock transported before it shall be placed beyond its reach or beyond the possibility of some certain identification. The answer in this case stated that the 20 dead hogs died in transit, and were removed from the car by defendant's agents and employees, and that such removal was necessary to the safe transportation of the remaining hogs. As was said by Mr. Justice Milton in *Wichita & W. Ry. Co. v. Koch,* 8 Kan. App. 642, 56 Pac. 538:

"Under the facts of this case, the only purpose a written notice of the claim for damages could have served would have been to give the railroad company an opportunity to settle the claim without suit. No inspection or investigation as to the condition of the 18 hogs that had perished was necessary. The company already had full knowledge thereof."

In *Kansas & A. V. R. Co. v. Ayers,* 63 Ark. 331, 38 S. W. 515, Mr. Justice Hughes, who delivered the opinion of the court, in discussing this proposition, says:

"The cattle that were dead in the car before the stock were removed and mingled with other cattle are not within this provission of the contract as to notice. The object in requiring the notice by the shipper of his intention to claim damages to be given before the cattle were removed and mingled with other cattle was to afford the railway company a fair opportunity to examine the cattle before they were removed and mingled with other cattle. As to these that were dead, the company had all the opportunity it could have had to examine them."

Other cases to the same effect are *C., C., C. & St. L. Ry. Co.*

*v. Potts & Co.,* 33 Ind. App. 564, 71 N. E. 685, and *M. K. & T. Ry. Co. v. Fry,* 74 Kan. 546, 87 Pac. 754.

Indeed, counsel for defendant in error in their brief do not seriously insist that under the circumstances strict compliance with this clause was necessary to a recovery, but claim that there was a fatal variance between the contract declared upon by the plaintiff and the one established by the evidence. There was, we think, a variance between the allegations of the petition and the proof, but no variance was complained of in the court below, and it was never suggested that the defendant was misled thereby to its prejudice in maintaining its defense upon the merits. Further, the defendant answered setting up the contract of shipment in the form it was afterwards without objection introduced in evidence and thereafter there was no misunderstanding or dispute as to its contents. It is well settled that even a fatally defective petition may be cured by the allegations of an answer. *Irwin v. Paulett et al.,* 1 Kan. 418; *Barkley et al. v. State.* 15 Kan. 99. In *Grandstaff et ux. v. Brown et al.,* 23 Kan. 176, it is held that, if anything should intervene between the filing of the petition and the final rendering of judgment which could by a fair and reasonable intendment be construed to cure the defective allegations of the petition, the courts will hold that such defective allegations are thereby cured. In the case at bar the actual contract entered into by the parties was introduced in evidence without objection, and there seems to have been no misapprehension on the part of any of the parties to the action as to its actual contents. Mr. Bates, in his work on Pleading and Practice, 1 Bates P. & P., p. 526, states the rule as follows:

"If proof is. offered of an issue or of a single fact different from that stated in the pleadings, but not amounting to a failure of proof, and no objection is made by the adverse party, it is of no consequence. The objection is not available in the reviewing court. It is too late then. Failure to have ordered the amendment is of no consequence."

The same author, on page 527, *supra,* discussing the rule as to variance, further says:

"If it has misled the other party, it is material; otherwise not. The inqury is then whether he was misled. The party objecting must prove that he has been misled."

The foregoing excerpts seem to be in harmony with our Code of Civil Procedure. Section 4337, Wilson's Okla. Rev. & Ann. St. 1903, provides that:

"No variance between the allegations, in a pleading, and the proof, is to be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled, and thereupon the court may order the pleading to be amended, upon such terms as may be just."

The general rule is stated in 22 Enc. of P. & P. 640, as follows:

"A variance may be waived by failing to object at the proper time to the admission of evidence on the ground that it does not correspond to the allegations of the pleading in support of which it is offered, by admission in the pleading of the party who would otherwise be in a position to take advantage of the variance, or by a failure to allege surprise, seek postponement of the trial, or take other steps that are essential to make the question of variance available on appeal."

We are of the opinion that under the foregoing authorities and provision of our statute the question of variance is not available to the defendant in this court.

The second ground upon which the court directed a verdict is that no negligence was shown on the part of the company. From an examination of that part of the answer of the defendant heretofore referred to, it will appear that the defendant admitted the death of the 20 head of hogs and their removal from the car at Sedalia, and further alleged that said car was carefully handled by said defendant, and that the death of said hogs was due solely to the action of plaintiff in negligently and carelessly overloading and crowding the same. Evidence was introduced in support of this theory. The railroad endeavored to prove that the hogs were

smothered by overloading and the general neglect of the plaintiff. On the other hand, evidence was introduced tending to prove that the car was not overcrowded, and some evidence was offered tending to show that they came to their death by reason of the negligence of the employees of the railroad company in turning large quantities of cold water on them when they were in a heated condition. While we are of the opinion that under the shipper's contract in this case it was necessary to show negligence on the part of the carrier in order to make a case against it, we cannot agree with the court below that no negligence was shown on the part of the company. There was a conflict in the evidence on the question as to whether the car was overloaded or not, some of the witnesses testifying that the load was not excessive for the size of the car used, and that the number of hogs at the weight of these hogs could properly be shipped in such a car. Not only this, but several witnesses testified on rebuttal that the defendant turned cold water from its water tanks along its route into the car upon the hogs, and that pouring this cold water upon them in the heated condition they were in would very likely produce instant death. We think this evidence was sufficient to send the case to the jury on the question of negligence of the carrier.

In *Southern Pac. Co. v. Arnett et al.,* 111 Fed. 849, 50 C. C. A. 17, Thayer, Circuit Judge, who delivered the opinion of the court, says:

" * * * We are aware of no rule of law which requires a shipper who has made a special contract to declare upon it, when he contends that the carrier has been guilty of some neglect of duty on account of which he is liable notwithstanding the provision of the contract. A special contract, when exacted by a carrier, is a defensive weapon, to be made use of by the carrier when sued by the shipper for any alleged dereliction of duty against which it was designed to afford protection."

The practice approved by the foregoing opinion seems to have been followed by counsel for defendant. He set up the contract of shipment limiting the common-law liability of the carrier, and vol-

untarily assumed the burden of proof on the question of negligence. The general rule is stated in 6 Cyc. 519, as follows:

"So, if the carrier seeks to escape liability on the ground that the loss of or injury to the goods is one excepted by a valid special contract, he has the burden of proving, not only the making of such special contracts but also that the loss or injury for which action is brought falls within a specified exception contained in such special contract."

We think it was error for the court below to take the case from the jury.

"Negligence and contributory negligence are usually questions for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." (*St. L. & S. F. R. Co. v. Copeland,* 23 Okla., 837, 102 Pac. 104.)

The point is made by counsel for defendant in error in their brief that no one accompanied the stock as caretaker on behalf of the plaintiff in error as was required by a clause of the special contract. The pleadings and evidence show that the carrier knew that no one was accompanying this shipment, and, where this is true, it must give the necessary attention regardless of the contract.

"If the shipper specially agrees, as a part of the contract of transportation, that he or his agents will care for the animals and attend to feeding and watering them, the carrier is thereby relieved from liability so far as opportunity of caring for, feeding, and watering the animals is afforded him; and, if damage results from the failure of the shipper under such circumstances to have the animals cared for, he cannot hold the carrier responsible. Nevertheless, if the carrier is aware that no one is accompanying the animals to care for them, his duty to give them proper attention is the same as though no contract for care by the shipper had been made." (6 Cyc. 438.)

The judgment of the court below is reversed, and the cause remanded, with directions to grant a new trial.

All the Justices concur.