J. C. JOHNSON v. E. HUSBAND AND W. A. SHORT.

22  277
40  591
22  277
49  17
22  277
63  166

1. VERDICT; *Modifying Particular Questions of Fact; Answers.* In an action on a promissory note, the defendants set up as a defense to the action, that the note was given for two diseased horses, and alleged fraud and deceit on the part of the plaintiff in selling the same. The plaintiff admitted, on the trial, that the horses had the distemper when sold, and that the distemper is a contagious disease. The defendants, however, claimed that the horses had something worse than the distemper, and that the plaintiff knew it at the time of the sale. Therefore, whether the horses had at the time of the sale some disease worse than the distemper, and whether the plaintiff knew it at the time of the sale, were two very important questions of fact in the case. For the purpose of ascertaining the opinion of the jury upon these questions, the plaintiff requested the court to submit to the jury the following special questions, to wit: "1. What, if any, disease did the horses have at the time of sale? 2. Did the sellers know what disease the horses had when sold?" The court below submitted the first of these questions to the jury, but refused the second, and in lieu of the second gave the jury the following: "Did the sellers know that the horses, had, when sold, any disease?" To which the plaintiff duly excepted. The jury returned a general verdict in favor of defendants (assessing their damages at $781.73), and answered said special questions as follows: To the first they answered, "A contagious disease;" to the second they answered, "Yes." "The plaintiff objected to the answer of the jury upon the first particular question of fact submitted being received, as not responsive to the question, and requested the court to direct the jury to state specifically the *name* of the disease, *or if they could not do that, then to state whether it was the disease known as distemper, or something else;* which the court refused to do, and ordered the verdict and special findings to be filed by the clerk, and discharged the jury"—to all of which the plaintiff duly excepted. *Held,* That by this action of the court and jury the plaintiff was deprived of a substantial right given to him by the statutes, (Laws of 1874, pp. 140, 141, ch. 91, § 1; *Bent v. Philbrick,* 16 Kas. 190; *Central Branch U. P. Rld. Co. v. Hotham,* ante, p. 41,) the right to have special questions of fact submitted to the jury, and proper answers given to them.

2. VERDICT, *Obtained by Marking, Addition and Division.* Where a verdict is obtained by marking, aggregation and division, and it is uncertain whether it was obtained in pursuance of a previous agreement, made by the jury, that the result finally obtained by such marking, aggregation and division should be their verdict, but it is certain that at least four of the jurors believed it was so obtained, and evidently felt that they

were bound to abide by such result, *held,* that such verdict should be set aside on proper motion.

3. IMPEACHING VERDICT; *Affidavits of Jurors.* The rule stated in the case of *Perry v. Bailey,* 12 Kas. 539, that the affidavits of jurors, stating facts which do not essentially inhere in the verdict itself, may be received to overthrow or set aside such verdict, followed.

## *Error from Saline District Court.*

AT the November Term, 1877, of the district court, *Husband* and *Short* had judgment against *Johnson,* who brings the case to this court. The facts, pleadings and proceedings sufficiently appear in the opinion.

*Garver & Lovitt,* for plaintiff in error:

The court should have submitted to the jury the special findings requested by the plaintiff—one of which was, to ascertain whether the jury found that the vendors had knowingly and fraudulently made false representations as to the condition of the horses. (*Bent v. Philbrick,* 16 Kas. 190.) As the question was changed and submitted, it was pertinent to nothing really in controversy, for it was not claimed by plaintiff, but that they knew the horses did have the distemper, which is a disease. Plaintiff maintained that Husband was told that the horses had the distemper, and the evidence supports that view. If this was not the fact, and the jury believed that the vendors knew that the disease was something other than what is called the distemper, the plaintiff had a right to be so informed.

The first question is also pertinent and appropriate, and the plaintiff had a right to have a definite answer to it, and to be informed as to whether the horses had simply a distemper or some more virulent disease. The jury answered this by saying they had "a contagious disease." There is no dispute that the disease called distemper by the witnesses is contagious. The main controversy on the trial was as to whether the horses had the distemper, or some more dangerous disease as claimed by Husband. The answer given by the jury gave no information upon this question other than what was

generally admitted, and was not responsive to the inquiry. Plaintiff requested the court to require the jury to definitely answer this question by naming the disease, or, if they could not do that, to state whether or not it was distemper. This the court refused to do, and in this we say is error.

The amount of the verdict, $781.73, shows that the jury figured the damages down to a fine point, and it suggests the idea of there being some question as to the methods adopted. What this method was, is shown by the affidavits of the jurors introduced by the plaintiff. It was a verdict by lot, or aggregation and average, and not one obtained by an honest expression of the judgment of each juror upon the sum returned. Such verdicts should be set aside. (Hilliard on New Trials, 127; 2 Graham & Waterman on New Trials, 580.) The affidavits of the jurors were admissible to prove how they arrived at the verdict. (*Perry v. Bailey*, 12 Kas. 539.)

*John Foster*, for defendants in error:

The question as first stated was not a proper one to submit in this case to the jury. It was asking the jury to resolve themselves into a commission of veterinary surgeons, and determine to a certainty that which, in all cases of this kind, must remain uncertain. It was clearly shown that the horses had some contagious and dangerous disease, and that it was not the distemper; and this, I submit, was sufficient to support the verdict. If plaintiff in error had wanted findings on these facts, he should have submitted questions to that end. It is not the proper time after verdict to present new questions. But evidently the intention was to put a question that the jury could not agree upon, one which the best authors do not agree upon.

The court may change the question if it is not in proper form: 36 Ind. 127; *Allen v. Davidson*, 16 id. 416; *Morse v. Morse*, 25 id. 156; *Mutual Benefit Life Ins. Co. v. Cannon*, 48 id. 264; *Harbaugh v. Cicotte*, 33 Mich. 247.

The correction asked would not change the verdict. And there was no error: *Indianapolis & St. Louis R. R. Co. v.*

*Stout*, 53 Ind. 144; *House v. McKinney*, 54 id. 240; *K. P. Rly. Co. v. Reynolds*, 8 Kas. 634.

To make the verdict illegal, there must be an agreement in advance to abide by the verdict thus obtained. The affidavits of jurors are not competent for this purpose of impeaching verdict: *Bailey v. Beck*, 21 Kas. 462; *Heath v. Conway*, Bibb (Ky.), 398; *Taylor v. Giger*, Hardin (Ky.), 595; *Hamilton v. Des Moines Valley R. R. Co.*, 36 Iowa, 31; *Lee v. Clute*, 10 Nev. 149; *Leverett v. State*, 3 Tex. App. 213; *Thompson v. Commonwealth*, 8 Gratt. 649; *Shobe v. Bell*, 1 Rand. (Va.) 42; *Cowperthwaite v. Jones*, 2 Dallas, 56; *Dana v. Tucker*, 4 Johns. 487; *Dorr v. Fenno*, 12 Pick. 520; *Chandler v. Barker*, 2 Harr. (Del.); *Grennell v. Phillips*, 1 Mass. 541; *Turner v. Tuolumne*, 25 Cal. 397.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought April 24, 1877, by J. C. Johnson against E. Husband and W. A. Short, on a promissory note for $170, dated July 22, 1876, due October 1, 1876, payable *to the order* of Platter & Crew, indorsed, when made, by Short, and indorsed on August 20, 1876, by Platter & Crew to the plaintiff Johnson.

The defendants set forth in their answer, as a defense to the action, that the only consideration for said note was two horses purchased by Husband of said J. C. Johnson and W. V. Platter, and N. S. Crew; that the horses were purchased for work on Husband's farm, which the vendors at the time well knew, and stated that the horses were all right (except a cold), which statement Husband relied upon, and in consideration thereof made the purchase; that the horses, however, were not all right, that they had a contagious disease which rendered them worthless, which the vendors at the time well knew, and which Husband did not know; that said horses communicated said disease to a large number of other horses belonging to Husband, which rendered those other horses also worthless; that Husband expended a large amount of time, money and labor in doctoring and taking care of these horses;

and that he sustained damages by reason of the foregoing facts to the amount in the aggregate of $2,500, for which amount he asked judgment. The defendants also set forth in their answer that Short signed said note as a guarantor only, and that he did not receive any part of the consideration for the note. The plaintiff's reply was a general denial. A trial was had before the court and a jury, and the verdict and judgment were rendered in favor of the defendant Husband, and against the plaintiff, for $781.73 and costs. To reverse this judgment, the plaintiff now brings the case to this court, on petition in error.

The record is voluminous, and many questions are raised, but we hardly suppose that it is expected that we shall go into elaborate detail in the discussion of, all of them.

The plaintiff claims that the court below committed material error in the admission and rejection of testimony. Whether it did or not, we shall not stop to inquire, but shall pass to the next questions.

The plaintiff also claims that the court erred in its instructions to the jury. Neither shall we stop to consider this question. For, even if the court did err as is claimed, we would think that, with the view the jury took of the case, the error was immaterial.

The plaintiff also claims that the court below erred with reference to the special findings of the jury. This question we shall examine more at length. It appeared on the trial of the case in the court below, that said horses were sold by Johnson, Platter and Crew to Husband, on July 22, 1876, for $320, and that Husband gave two promissory notes therefor, one of which he afterward paid, and the other is the one now sued on. The plaintiff admitted on the trial that said horses were diseased at the time of said sale, and that the vendors knew it. He admitted that the horses had a cold, and that they also had the distemper, and that the distemper was and is a contagious disease, and that the vendors at the time of the sale well knew all of these things. But he claimed that Husband also knew these facts; that Husband

himself carefully examined the horses, and that he was also informed by the vendors and by other persons that the horses not only had a cold, but that they also had the distemper. Husband, however, claimed at the trial that the disease which the horses had at the time of the sale was worse than a cold, and worse than the distemper, and that the vendors knew it, but that they falsely and fraudulently represented and stated that the horses had nothing worse than a cold.   Therefore, whether the horses had at the time of the sale some disease worse than the distemper, and whether the vendors knew it at that time, or not, were two very important questions of fact in the case.   For the purpose of ascertaining the opinion of the jury upon these questions, the plaintiff requested the court to submit to the jury the following special questions, to wit: "1. What, if any, disease did the horses have at the time of sale? 2. Did the sellers know what disease the horses had when sold?" The court below submitted the first of these questions to the jury, but refused the second, and in lieu thereof gave the jury the following: "Did the sellers know that the horses had, when sold, any disease?"   To which the plaintiff duly excepted.   The jury returned a general verdict in favor of the defendants, and answered said special questions as follows: To the first they answered, "A contagious disease;" to the second they answered, "Yes."   "The plaintiff objected to the answer of the jury upon the first particular question of fact submitted being received, as not responsive to the question, and requested the court to direct the jury to state specifically the *name* of the disease, *or if they could not do that, then to state whether it was the disease known as distemper, or something else;* which the court refused to do, and ordered the verdict and special findings to be filed by the clerk, and discharged the jury"—to all of which the plaintiff duly excepted.   We think the court below erred.   By this action of the court and jury the plaintiff was deprived of a substantial right given him by the statutes; (Laws of 1874, ch. 91, pp. 140, 141, § 1; *Bent v. Philbrick,* 16 Kas. 190; *Cent. Branch U. P. Rld. Co. v. Hotham,*

1. Verdict; modifying particular questions of fact; answers.

ante, p. 41;) and by this action of the court and jury nothing was found by these two special findings, except what had already been admitted by the plaintiff himself on the trial. The plaintiff had the right to have special questions of fact submitted to the jury, and proper answers given to them — answers which would mean something in the case, and not such as would be merely a reiteration of what the plaintiff had already admitted. The answers should be such as would settle some disputed question between the parties.

The plaintiff also claims that the verdict of the jury for $781.73, damages, was the result of marking, aggregation and division, and that the verdict was procured in that manner in pursuance of a previous agreement to that effect made by the jury. On the motion for a new trial, the plaintiff read in evidence the affidavit of George Geisler, one of the jurors, which affidavit states as follows:

"That the jury, in order to arrive at the amount of damages to be allowed to said defendant Husband, mutually agreed that each juror should set down such amount as he thought said Husband should recover for each separate item of damage claimed; that the several amounts thus obtained should be added together, the aggregated sum divided by twelve, *and that the quotient thus obtained should be taken and accepted as the amount to be returned in the verdict of the jury as the damages sustained by the said Husband;* . . . that such agreement was carried out, and the amount of damages returned by the jury in their verdict was obtained by such addition and division, and the quotient obtained was in all cases abided by on the part of said jury."

Three other jurors agreed with Geisler (as their affidavits show) that the verdict was obtained as Geisler states that it was.

The defendants read in evidence on said motion for a new trial the affidavit of Daniel Lockard, a juror, which affidavit states that it was —

"Proposed that each juror should mark down the amount he thought the defendant ought to recover on each of the separate items for which damages were claimed; that the several amounts for each item be divided by twelve, and the several quotients then added together, in order to see if they

could get an amount upon which they could agree. That each item of damages was taken up separately, and in each case after the average was found as aforesaid the amount was adopted by vote of all the jurors; and after the several amounts had been so obtained, the said sums were added together, when it was proposed to deduct from the sum so obtained the amount of the note upon which this suit was brought, which after some discussion was done, and the balance was then agreed upon as the amount of damages to be awarded."

Six other jurors agreed with Lockard, as their affidavits show, that the verdict of the jury was obtained as Lockard says that it was. But two of said six jurors, after making an affidavit stating that the facts were as Lockard

2. Verdict obtained by marking, addition and division.

stated them to be, then made another affidavit stating that the facts were as Geisler stated them to be. We think this verdict ought to have been set aside. That it was obtained by marking, aggregation and division, is proved beyond all question. Whether it was obtained in pursuance of a previous agreement made by the jury, that the result finally obtained by such marking, aggregation and division should be the verdict of the jury, is not so clear. It is certain, however, that at least four of the jurors believed that it was so obtained, and these four evidently felt bound to abide by such result. Geisler's affidavit was the first one made upon this subject. It was made on November 30, 1877, only four days after the verdict was rendered. Lockard's affidavit, which was the principal affidavit read on the other side, was not made until January 8, 1878. Nine of the jurors made affidavits. Not one of them stated that the facts set forth in Geisler's affidavit were not true, unless the facts as set forth in Lockard's affidavit contradict the facts set forth in Geisler's affidavit. Four of the jurors, including Geisler, made affidavits stating that the facts as set forth in Geisler's affidavit were true; and Lockard himself, as shown by the affidavit of R. A. Lovitt, stated to Lovitt and another that the facts as stated in Geisler's affidavit were true. Lovitt's affidavit was not contradicted. We think the

court below erred in not setting aside this verdict. Some of the authorities upon this question will be found referred to in 9 U. S. Dig. (F. S.), 575, 576. That the affidavits of jurors, stating facts which do not essentially inhere in the verdict itself, may be received to overthrow or set aside the verdict, see *Perry v. Bailey*, 12 Kas. 539. Many authorities may be found opposed to this doctrine, but still we think this is the better doctrine.

*3.Impeaching verdict; affidavits of jurors.*

There are some other questions in this case, but we do not think that it is necessary to consider them. The judgment of the court below will be reversed, and cause remanded for further proceedings.

All the Justices concurring.