THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
v. I. FROGLEY.

No. 14,801   (89 Pac. 903.)

SYLLABUS BY THE COURT.

RAILROADS—*Injury to Live Stock During Transportation—Notice of Claim for Damages.* A contract for the transportation of live stock that makes it a condition precedent to a recovery of damages for loss or injury to such stock resulting from the carrier's negligence that the shipper shall give written notice of his claim before the live stock are mingled with other live stock or removed from the pens at destination does not apply to animals which are dead when they reach their destination and which were killed through the carrier's negligence.

Error from Labette district court; THOMAS J. FLANNELLY, judge. Opinion filed April 6, 1907. Affirmed.

*John Madden,* and *W. W. Brown,* for plaintiff in error.

*A. D. Neale,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: On the evening of November 13, 1904, I. Frogley delivered fifty-three head of cattle to the Missouri, Kansas & Texas Railway. Company, at Chetopa, Kan., for shipment to Kansas City. They should have been delivered in Kansas City on the next morning, for the market of that day, but did not reach there until the evening of November 14, after the market had closed. He was unable to sell all of them until the morning of November 16, and in the meantime there had been a decline in the market. For the loss of market, the shrinkage of the cattle before a sale could be effected, the extra feed required, and for the death of one steer during transportation, caused by the negligence of the railway company, all amounting to the sum of $147.93, Frogley asked a recovery. The testimony showing negligence of the company in transporting the cattle to market was sufficient, and hence judgment was given against the company for the amount claimed. The only defense, or rather the only contention here, is that Frogley failed to give the notice of loss provided for in the shipping contract. Frogley did not base his action on any written contract, nor offer one in evidence, but it was brought out on his cross-examination that he signed a contract containing conditions regulating and limiting his right to bring and maintain an action in order to recover damages for loss or injury to the cattle while they were in charge of the company. This was an irregular way of making a defense, but, assuming that the contract is fairly in the case, it did not preclude a recovery by Frogley. It provided:

"The shipper further expressly agrees that as a condition precedent to his right to recover any damages for any loss or injury to said cattle resulting from car-

rier's negligence as aforesaid, including delays, he will give notice in writing to the conductor in charge of the train or the nearest station- or freight-agent of the carrier on whose line the injuries occur before said cars leave that carrier's line or before the live stock are mingled with other live stock or removed from pens at destination. In his notice he shall state place and nature of the injuries, to the end that they may be fully and fairly investigated, and said shipper shall, within thirty days after the happening of the injuries complained of, file with some freight- or station-agent of the carrier on whose line the injuries occurred his claim therefor, giving the amount."

Under a contract with the same company, and identical in terms, it was held that the provision as to notice did not cover damages like loss of market or other losses occasioned by the carrier's negligent delay which arise after transportation has ended. (*Railway Co. v. Fry,* 74 Kan. 546, 87 Pac. 754. See, also, *Railway Co. v. Poole,* 73 Kan. 466, 87 Pac. 465; *Cornelius v. Railway Co.,* 74 Kan. 599, 87 Pac. 751.)

The only loss or injury occasioned during transportation and included in the recovery by Frogley is for the animal which was killed on the way to Kansas City, valued at $23.97. Is this loss included in the contract? The court instructed the jury that the contract was not binding upon the parties, because the statute prohibits railroad companies from changing or limiting their common-law liability except by regulation or order of the board of railroad commissioners, and no such order or regulation was shown. Counsel for the railway company make a very strong and plausible argument that the provisions of the contract requiring notice before bringing an action for damages and the like do not limit the common-law liability of the carrier, and they cite *Sprague v. Mo. Pac. Rly. Co.,* 34 Kan. 347, 8 Pac. 465; *Kalina v. Railroad Co.,* 69 Kan. 172, 76 Pac. 438; *Express Company v. Caldwell,* 88 U. S. 264, 22 L. Ed. 556; *Rice v. The K. P. Rly.,* 63 Mo. 314; *Oxley v. St. Louis, Kansas City & Northern Railway,* 65 Mo.

629; *Dawson v. The St. Louis, Kansas City & Northern Railway Company,* 76 Mo. 514. However that may be, we are satisfied that the animal killed during transportation did not come within the stipulation requiring notice of the loss. The evidence shows that the death of the animal was due to the negligence of the company, and of course no contract can be made which will relieve the company from liability for loss occurring through its misconduct or negligence. If the purpose or effect of the stipulation as to notice was to exempt the company from that kind of liability it would be contrary to public policy, and invalid.

The purpose of the stipulation was to give the carrier an opportunity to inspect the injured animals before they were removed from the custody of the carrier and mingled with other animals. The stipulation is upheld upon the ground that after the stock pass from its possession and are mingled with other stock of a similar kind or are sent to the slaughter-house it would be well-nigh impossible for the company to obtain satisfactory proof of the nature and extent of the injuries, and therefore the provision which gives the opportunity to ascertain the damages actually sustained is deemed to be reasonable. Contracts of this kind are viewed with considerable strictness by the law, and unless they are practicable and reasonable they cannot be sustained. (*Railway Co. v. Poole,* 73 Kan. 466, 87 Pac. 465.) As to the dead animal there was no room for the operation of the provision nor any useful purpose to be subserved by a notice. The steer died while it was in charge of the company and the duty of removing the carcass from the car devolved upon the company. It therefore had the opportunity to ascertain the extent of the loss resulting from its negligence. The removal of the dead steer brought the loss to the attention of the company, and the purpose of the notice was then fully accomplished.

In *Baker v. Mo. Pac. Ry. Co.,* 34 Mo. App. 98, it was held that a stipulation in a shipping contract that the

shipper should give notice of any claim for damages before the stock were removed from the place of their destination had no application to a removal by the carrier or its servants, but covered only a removal·by the shipper or owner.

In *Kansas & Ark. Valley R. Co. v. Ayers,* 63 Ark. 331, 38 S. W. 515, the supreme court of Arkansas had before it a shipping contract like the one in question, involving the matter of notice where some of the animals died before they reached their destination. It decided that a notice was not essential to a recovery, and in doing so said:

"The cattle that were dead in the car before the stock were removed and mingled with other cattle are not within this provision of the contract as to notice. The object in requiring the notice by the shipper of his intention to claim damages to be given before the cattle· were removed and mingled with other cattle was to afford the railway company a fair opportunity to examine the cattle before they were removed and mingled with other cattle. As to these that were dead, the company had all the opportunity it could have had to examine them." (Page 336.)

As the dead animal was not within the intention of the parties nor the provisions of the contract the instruction of the court with respect to the stipulation.as to notice is immaterial.

We find no error in any of the rulings, and therefore the judgment is affirmed.