W. A. Darling v. The Atchison, Topeka & Santa
Fe Railway Company.

No. 15,260.   (93 Pac. 612.)

SYLLABUS BY THE COURT.

1. Practice, District Court—*Directing a Verdict.* When upon
the trial of an action in a district court the plaintiff has in-
troduced evidence tending to establish any cause of action
set forth in his petition it is error for the court to instruct a
verdict for the defendant.

2. —— *Motion for a New Trial Pending—Case-made—Juris-
diction.* In any such action, upon the return of a verdict, a
report of a referee or a decision of the court which determines
the issues of fact, either party considering himself aggrieved
thereby may file his motion for a new trial; and until ten
days after such motion is decided the jurisdiction of the court
to extend the time for making and serving a case-made for
appeal to the supreme court continues.

3. Railroads—*Shipment of Live Stock—Damages—Evidence—
Question for the Jury.* In this case it is held that the evi-
dence was sufficient to entitle the plaintiff to a decision thereon
by the jury, and that the instruction of the court directing
a verdict for the defendant is erroneous.

Error from Sedgwick district court; Thomas C.
Wilson, judge. Opinion filed December 7, 1907. Re-
versed. Opinion denying a petition for a rehearing
filed February 8, 1908.

*I. P. Campbell, J. Graham Campbell,* and *Ray Camp-
bell,* for plaintiff in error.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,*
for defendant in error.

The opinion of the court was delivered by

Smith, J.: At the outset of this case the defendant
in error denies the right of the plaintiff in error to be
heard and moves the dismissal of the action in this
court.

The case presented here for review, from the stand-
point of the plaintiff in error, is, in substance, this: In

his action against the railway company issues of fact had been framed and a jury had been impaneled to try them; certain material and competent evidence had been introduced which, if true, established some liability against the defendant; certain other material and competent evidence was offered by the plaintiff further to establish his claim, but it was erroneously excluded by the court; thereupon the plaintiff rested his case, and, on the motion of the defendant, the court instructed the jury to return a verdict in its favor. Thus a trial of issues of fact was, at least, begun, and the facts were erroneously determined adversely to the plaintiff, but not by the jury, to whose verdict thereon he was entitled. He asked for a reexamination of these facts in the same court by filing a motion for a new trial.

The defendant, on the other hand, says that the order of the court directing a verdict for it was equivalent to a demurrer to the plaintiff's evidence, and involved only a question of law, to wit: Conceding the evidence to be true, and allowing all inferences favorable to plaintiff reasonably to be drawn therefrom, does it establish a cause of action in favor of the plaintiff? This contention seems to be supported by *Sullivan v. Phenix Ins. Co.*, 34 Kan. 170, 8 Pac. 112, to the extent, at least, of holding the direction of a verdict equivalent to a demurrer to the evidence. From this position the defendant advances another step and says a motion to direct a verdict is equivalent to a motion for judgment upon the pleadings and opening statement of counsel, and, as was held in *Wagner v. Railway Co.*, 73 Kan. 283, 85 Pac. 299, this raises a question of law only and no motion for a new trial is necessary to enable the aggrieved party to bring the decision to this court for review. Wherefore, the defendant says, in this case the motion for a new trial was unnecessary, and the fact that such a motion was filed did not extend the pendency of the action or the time of making and serving a case-made; and, as the

order purporting to extend the time was made more than ten days after the verdict was rendered, the court had lost jurisdiction to make it, and therefore the action here should be dismissed.

The argument is ingenious but is unsound. As defined by section 265 of the code (Gen. Stat. 1901, § 4712), a trial is a judicial examination of the issues, whether of law or fact, in an action; and a new trial (Code, § 306; Gen. Stat. 1901, § 4754) is a reëxamination in the same court of an issue of fact, after a verdict by a jury, report of a referee or a decision of a court. The same section provides that the former verdict, report or decision shall be vacated and a new trial granted on the application of the party aggrieved (which section 309 [Gen. Stat. 1901, § 4757] provides must be by motion on written grounds) for certain causes specified affecting materially the substantial rights of such party. Some of the causes specified are: Any order of the court by which the party is prevented from having a fair trial; that the decision is not sustained by sufficient evidence, or is contrary to law; or error of law occurring at the trial and excepted to at the time. (Code, § 306; Gen. Stat. 1901, § 4754.)

Strictly construed, then, as defined by the code a trial involves the judicial examination of all the issues of law and fact in an action, while a *new* trial involves only the reëxamination of an issue of fact. That this strict construction is not applicable to new trials of ordinary actions, in which the law applicable varies to the varying facts pleaded or proved, is apparent when we consider the grounds for which new trials "shall be granted" as prescribed, some of which involve only a question of law. These must be reëxamined, both on the hearing of the motion for the new trial and on the new trial, if granted.

Issues of law are not ordinarily framed in an action by the petition and answer, or by the answer and reply, in the sense that a proposition of law is asserted

in one pleading and denied in another; but such issues may arise in many ways at almost every stage of the action, and are sometimes determinative of the action and sometimes not; sometimes they arise in the course of the trial and sometimes before the trial is commenced.

It goes without saying that there can be no new trial until there has been a trial; and, by a fair construction of the code, it must be such a trial as results or should result in a verdict, a report of a referee or a decision by the court which involves and determines the facts in issue. Otherwise there could be no new trial "of· an issue of fact." It follows, therefore, that whenever a trial has been had upon issues of fact, which trial results in a verdict, report of a referee or a decision which determines such facts, either party who feels himself aggrieved may file his motion for a new trial on the grounds and within the time prescribed, and, until such motion is disposed of, the action is still pending and the statutory time for preparing a case-made for an appeal does not begin to run.

This view involves no conflict with, or modification of, *Wagner v. Railway Co.*, 73 Kan. 283, 85 Pac. 299. In that case judgment was rendered upon the pleadings and admitted facts. There had been. no trial of any issue of fact, and hence there could be no new trial. It is also in accord with *Sullivan v. Phenix Ins. Co.*, 34 Kan. 170, 8 Pac. 112. In that case the court directed a verdict for the defendant upon its conclusion that the plaintiff had produced no evidence tending to establish his cause of action. This court viewed the evidence differently and granted a new trial.

It is not suggested by the defendant how the verdict in this case could have been disposed of other than by a motion to set it aside and to grant a new trial. It is said, however, that in passing upon the request for an instructed verdict the court will be presumed to have accepted all of the plaintiff's evidence as true,

Darling v. Railway Co.

and to have accorded him every favorable inference
reasonably to be drawn therefrom, and then it de-
cided that the evidence so considered did not tend to
prove a cause of action in his favor. We think, how-
ever, that the plaintiff was entitled to a verdict of the
jury, under proper instructions, upon his right to re-
cover of the defendant any damages, and, if so, the
amount thereof, under his evidence tending to show
that he ordered cars of the defendant's agent for the
purpose of shipping cattle at a reasonable time be-
fore the time of shipment and that he had his cattle
at the station at the proposed time and the defendant
failed to provide the cars as ordered; especially as this
failure was entirely unexplained.

One contention of the plaintiff is that he offered
competent evidence to prove material facts on the trial
and that the court by its order excluded the same.
Whether this be really true or not, and of 'it we shall
speak later, he had a right to re-present the question,
as he did, in a motion for a new trial; and when the
court again decided adversely to him thereon he had
the right to appeal and to have the decision of this
court thereon.

It appears by the record that no judgment was in
fact rendered on the verdict but the action remained
pending upon the motion until that was decided. The
court had jurisdiction at any time within ten days
thereafter to make and serve a case-made for appeal.
The motion to dismiss is denied.

Proceeding to the consideration of the errors as-
signed, we are of the opinion that when a train-dis-
patcher's office is supplied by a telephone connected
with a system of telephone wires and offices, and a
party goes to another telephone office so connected and
calls for the train-dispatcher, and the call is responded
to, the party should be allowed to testify who the
person responding said he was, even though the witness
has no acquaintance with the dispatcher and does not

57—76 KAN.

recognize the voice.   Also, if the person responding said he was the train-dispatcher the witness may testify to the conversation as if had face to face.   The rule seems to be the same as if the witness, unacquainted with the officer, had gone into the dispatcher's office and inquired for him and a man had responded: "I am the dispatcher; what can I do for you?"   The witness would be allowed to testify to the conversation had, so far as relevant to the issues being tried.   We are, however, unable to say from the record that this error was prejudicial, in view of facts subsequently developed in the evidence.   On the general proposition of telephonic communications see *Oskamp v. Gadsden,* 35 Neb. 7, 52 N. W. 718, 17 L. R. A. 440, 37 Am. St. Rep. 428, and note; 27 A. & E. Encycl. of L. 1091.

It is urged, and we think correctly, that the court erred in excluding portions of the depositions of witnesses Norton and Reed.   The evidence excluded was in verification of exhibits from the books of the Kansas City Stock-yards Company which received the cattle and of exhibits from the books of the commission company which sold them.   The witnesses respectively had charge of the office in which the books were kept concerning which he was interrogated, but in neither case did he hold the pen that made the entries and in neither case could he testify of his own knowledge that the entries were correct.   But their evidence did show that the entries were made in the usual course of business, and that the clerks who made the entries derived their knowledge of the facts entered from memorandum slips and oral reports made by the weighers and yardmen; also, that the books and the witnesses who made the memoranda and reports were out of the state and beyond the jurisdiction of the court.

It is a matter of common knowledge, and, hence, one of which the courts should take judicial notice, that in the great and multifarious business of a stock-yards company the clerk or bookkeeper who makes the

entries of the transactions in the books at the offices knows personally nothing of the correctness of the entries, but records only what he learns from others by memorandum slips or oral reports from others, who, in turn, may have derived their information from still others; also, that it is difficult and often impossible to secure the evidence of all these persons. It is also apparent that there can be no motive for falsifying such entries, and the entire business transacted by and through this great agency, running into millions annually, is based upon the fairness and accuracy of just such entries in the books of the stock-yards company and the books of the numerous commission companies. The courts should regard, as some evidence of the facts they purport to record, such entries, made from day to day in the regular course of business, without inquiring of the clerk in whose handwriting they appear what he knows of the correctness thereof, when it is evident he knows nothing; and without inquiring of the yardman who reported to the clerk or the weigher who reported to the yardman what he remembers of the transaction, when it would evidently be an impeachment of his veracity if he testified he had any particular remembrance of one transaction among the hundreds. Old rules of evidence—still, generally, good rules—must so far yield to new conditions as not greatly to impede the purpose for which they were formulated, viz., the ascertainment of the truth in relation to disputed facts in courts of justice. It is well said in volume 2 of Wigmore on Evidence, section 1530:

"The conclusion is, then, that *where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility* of doing so. Why should

not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognize as safe could be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the court room. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical."

(See, also, *Wright v. Railroad,* 118 Mo. App. 392, 94 S. W. 555; *Atchison, T. & S. F. Ry. Co. v. Williams* [Tex. Civ. App.], 86 S. W. 38.)

It is urged by the defendant that the errors, if any, in the introduction of evidence were not prejudicial and should be disregarded for the reason that it alleged in its answer that the plaintiff and defendant "entered into" a written contract of shipment, which, it says, is equivalent to alleging that the written contract was executed by the parties, and that the plaintiff did not in his reply deny the execution thereof under oath; that the contract contained the provision "that as a condition precedent to his [the plaintiff's] right to recover any damages for any loss or injury to his said stock during the transportation thereof, or at any place or places where the same may be loaded or unloaded for any purpose on the company's road, or previous to loading thereof for shipment, the shipper or his agent in charge of the stock will give notice in writing of his claim therefor to some officer of said

company . . . before such stock shall have been removed from the place of destination above mentioned" etc; that it was not alleged by plaintiff that such notice was given, nor was any excuse given for the failure to give it; that therefore the plaintiff was not entitled to recover in any event, and no error in the trial could be prejudicial to him.

Assuming, but not deciding, that the contention of the defendant in regard to its pleading the written contract and the failure of the plaintiff to verify his denial of the execution thereof is correct, we do not think the conclusion follows. Of the claims for damages, one is for shrinkage in the weight of the cattle in consequence of the failure of the defendant to furnish cars at the time they were ordered, which necessitated the holding of the cattle at the place of shipment. Another claim is for damage to the cattle after the arrival at the destination, on account of the carrier's negligent delay, resulting in loss of market and shrinkage. On the authority of *Railway Co. v. Frogley,* 75 Kan. 440, 89 Pac. 903, and *Railway Co. v. Fry,* 74 Kan. 546, 87 Pac. 745, it must be said that the contract, if it is to be considered, did not preclude a recovery of such damages without the notice. The defendant had full knowledge of the holding of the cattle before they were loaded, and had full opportunity to inspect them, which is the object of the notice. As to the loss of market, and other damages claimed after arrival at the destination, it was impossible to give the notice as required by the contract; hence this claim is not covered by the stipulation.

It appears therefore that the instruction to return a verdict for the defendant was erroneous, and the verdict is set aside and a new trial awarded.

OPINION DENYING A PETITION FOR A REHEARING.

(94 Pac. 202.)

*Per Curiam:* The motion for a rehearing is aimed especially at the denial of the motion to dismiss in the foregoing opinion.

As has been held in some courts, there is very little difference practically between sustaining a demurrer to plaintiff's evidence and an instruction to return a verdict for the defendant. Even if there be no difference, we must follow the procedure prescribed in the statute. Under section 266 of the code (Gen. Stat. 1901, § 4713) the plaintiff was entitled to a trial by a jury, and, under proper instructions, after he had produced all the competent evidence he had, he was entitled to a verdict for or against him, as the jury might determine.

On the trial the plaintiff offered evidence which we have held was competent, and it was excluded by the court. Now, whether this be denominated "any order of the court . . . by which the party was prevented from having a fair trial," or whether it be called an "error of law occurring at the trial" which had the same effect, the plaintiff was entitled to a new trial—a reëxamination in the same court of the issues of fact, under the provisions of section 306 of the code. (Gen. Stat. 1901, § 4754.)

An instructed verdict is nevertheless a verdict, and section 306 provides the only method of setting aside a verdict in the court where it is rendered. Even if it may be said that the order could be reviewed on error in this court without a motion for a new trial, if the statute authorizes a reconsideration in the same court upon such motion this opportunity cannot be denied.

We believe the bar of the state has for many years interpreted section 306 as contended for by the plaintiff, and that the language thereof justifies the contention. If a different interpretation should now be

placed upon the provision no good would result, but much uncertainty and confusion would likely follow.

The petition for a rehearing is denied.

BURCH, J. (concurring specially) : As I understand the matter, three sentences of the foregoing opinion express views of the court respecting the grounds for denying the motion to dismiss. They are that we must follow the procedure prescribed in the statute, that an instructed verdict is nevertheless a verdict, and that uncertainty and confusion would likely follow if any other interpretation of the statute were to be adopted.

One other consideration is important, and that is the good to be derived from allowing trial courts to review upon a motion for a new trial rulings made under the stress attending a trial.

For these reasons I am willing to hold down to the strict letter of the statute, deny the petition for a rehearing and allow the order denying the motion to dismiss to stand, notwithstanding the fact that in my estimation the logic of *Sullivan v. Phenix Ins. Co.,* 34 Kan. 170, 8 Pac. 112, *Wagner v. Railway Co.,* 73 Kan. 283, 85 Pac. 299, *White v. Railway Co.,* 74 Kan. 778, 88 Pac. 54, and *Van Tuyl v. Morrow,* 92 Pac. 303, is clearly to the contrary.