T. S. COCKRILL, *Appellee,* v. THE MISSOURI, KANSAS &
TEXAS RAILWAY COMPANY, *Appellant.*

No. 17,614.

SYLLABUS BY THE COURT.

1. WITNESSES — *Cross-examination — Discrediting Questions —
Judicial Discretion.* When a party takes the stand as a wit-
ness his adversary has a right, on cross-examination, for the
purpose of affecting his credibility, to inquire touching his
past life and conduct, the limits of such inquiry being ordi-
narily within the discretion of the trial court. When such
limits are unnecessarily restricted, but the party has testi-
fied concerning only matters on which there was other evi-
dence, such restriction may not be and in this case was not
materially prejudicial.

2. ———— *Refreshing Recollection — Competent Memorandum.*
The report of a commission company used by a shipper of
cattle to refresh his recollection of the sums received for the
animals composing the shipment, stated by him to be sub-
stantially correct as he remembered, is competent as a memo-
randum touching such sums, its weight and probative force
being for the jury.

3. EVIDENCE—*Reports, Telegrams, etc., Made by Trainmen—
Competent.* Reports, telegrams and memoranda relating to a
shipment of cattle, made by the trainmen at the time, in the
line of their duty, were competent evidence under section 384
of the civil code and should have been admitted, but such train-
men having testified substantially to all that such papers would
have shown their exclusion under the circumstances of this
case worked no substantial prejudice.

4. SHIPPING CONTRACT—*Written Notice of Damage—Obviated.*
When it is shown that some of the cattle were dead and others
crippled when set at the chute and that a representative of
the railway company was present at the unloading, the neces-
sity for the written notice usually provided for in contracts of
shipments is obviated, as such notice could not afford the
carrier any knowledge which it did not already possess.

Appeal from Miami district court; JABEZ O. RANKIN,
judge. Opinion field November 8, 1913. Affirmed.

Cockrill v. Railway Co.

*John Madden, W. W. Brown,* both of Parsons, and *R. E. Coughlin,* of Paola, for the appellant.

*Frank M. Sheridan, Charles T. Meuser,* and *Bernard L. Sheridan,* all of Paola, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued for damages to a carload of cattle alleged to have been shipped, by oral agreement, over the defendant's road from Parker, Kan., to the Kansas City Stockyards in Kansas City, Kan., averring that the defendant furnished a defective car, which was switched back and forth at Paola for four or five hours, delaying the shipment and causing four of the cattle to be killed and four crippled and rendered unfit for the market, to the plaintiff's damage of $350. The answer alleged that the shipment was made under a written contract by the terms of which the defendant was to deliver the cattle to the consignee at Kansas City, Mo., and written notice of any loss or injury should be given before the shipment should leave the defendant's lines or be mingled with other live stock or removed from pens at destination. The reply alleged that if the defendant did sign the contract set up in the answer it was because he was compelled to do so after the cattle were received for shipment and loaded and that he was not apprised of its terms or offered any choice of rates therein referred to, but was advised that unless he signed, the cattle would not be shipped; that he was not familiar with the terms of the contract and did not agree to any of them; and further, that the representative of the defendant had actual knowledge of the condition of the cattle upon their arrival at the destination. The jury found in favor of the plaintiff in the sum of $295.25, being $135.25 for cattle killed, $65 for those crippled, $45 for inability to "take the fill," and $50 for loss of

market. The last two items were remitted, and judgment was entered for $200.25 and costs.

The defendant appeals and complains that the court refused it the right to pursue the plaintiff on cross-examination as to his connection with the notorious Buckfoot sprinters for the purpose of affecting his credibility. An offer to go into details was overruled, but the defendant was permitted to inquire and the plaintiff was required to answer touching his arrest in connection with the leader of this band on the charge of obtaining money fraudulently. The plaintiff having taken the stand as a witness thereby held himself out as truthful and reliable, and under the well-settled rule in this state the defendant had a right to search into his previous life and conduct for the purpose of enabling the jury to judge as to his character and credit. The limit to which such cross-examination should go is ordinarily discretionary with the trial court (*The State v. Pugh,* 75 Kan. 792, 796, 90 Pac. 242; *Ramsey v. Partridge,* 86 Kan. 398, 121 Pac. 343), and while in this case it was unnecessarily restricted, still, as the plaintiff testified mainly as to the shipment, its value and returns, on all of which points there was other testimony, the defendant suffered no material prejudice by the restriction. The court admitted the report the commission company made to the plaintiff, and stated by him to be substantially correct as he remembered it, and which was evidently the basis on which he settled for the shipment. This was competent as a memorandum to refresh his memory touching the sums realized for the dead and crippled cattle, its weight and probative force being for the jury. (*McNeely v. Duff,* 50 Kan. 488, 31 Pac. 1061; *Telegraph Co. v. Collins,* 7 Kan. App. 97, 53 Pac. 74.)

Certain reports, telegrams and memoranda touching the shipment made by the trainmen in the line of their duty were rejected on the ground of incompetency.

These were proper reports of transactions or events made in the regular course of business and were admissible under section 384 of the civil code (*Richolson v. Ferguson,* 87 Kan. 411, 124 Pac. 360; *Barker v. Railway Co.,* 88 Kan. 767, 129 Pac. 1151), but as the witnesses stated substantially all that was shown by these reports no material prejudice is deemed to have arisen from the ruling.

Complaint is made of an instruction that the written notice provided for in the contract does not apply to animals which are dead when they leave the defendant's control or to those so nearly dead that they could not be removed by the plaintiff. The jury found that upon unloading the shipment four cattle were dead and three crippled and that these seven were removed from the car after the others had been unloaded. The testimony shows that the defendant had a switch foreman at the place of unloading who looked after the handling of stock, and whose duty it was to report when he set cattle at the chute, and that the report of the stockyards company in this case stated as the cause of the delay the removal of the dead and crippled cattle, and that this notation was made after the car was set at the chute and after the stock had been unloaded. Under these circumstances we see no possible benefit which the defendant could have derived by receiving a written notice of what it already knew respecting these dead and crippled cattle. (*Railway Co. v. Fry,* 74 Kan. 546, 87 Pac. 754; *Railway Co. v. Frogley,* 75 Kan. 440, 89 Pac. 903; *Darling v. Railway Co.,* 76 Kan. 893, 901, 93 Pac. 612; *Railway Co. v. Wright,* 78 Kan. 94, 95 Pac. 1132.)

An instruction and certain special findings touching the contract in question and the matter of different rates for the shipment are criticised. If the blank contract was signed by the shipper in response to a statement of the agent that otherwise the cattle would not

go out, as claimed by the plaintiff, and if as also claimed by him he had no knowledge of the existence of different rates, then of course the defendant would be liable for the cattle killed or crippled by its negligence. If on the other hand the contract when filled out was in all respects binding on the plaintiff the defendant would still be liable for negligently killing or crippling the cattle if proper written notice were given, or if without such notice the defendant knew the condition of the cattle while unloading as fully as it could have known by such notice. Therefore the instructions and questions referred to become immaterial.

It is insisted that the finding that the defendant's foreman at the stockyards examined the cattle when they were being unloaded and reported their condition was entirely unsupported by the evidence, but the testimony of one of the defendant's witnesses as set out in the counter-abstract sustains the finding. (*Hayes v. Railway Co.*, 84 Kan. 1, 5, 113 Pac. 421.)

One or two of the jury's answers to questions touching the duty and relation of the stockyards company justify some complaint, but in view of the other findings and the testimony no prejudicial error is apparent.

Complaint is also made that certain questions submitted by the defendant were answered contrary to the evidence, but we find nothing of substance in this respect.

Certain testimony touching statements made by the plaintiff upon a former trial, rejected by the court and on the motion for a new trial produced by affidavit, is regarded by the defendant as material, but as it touched the contract of shipment only we think, as already indicated, that whatever view of such contract be taken the entire evidence fairly tended to show liability for

so much of the damage as was covered by the final judgment of the court.

Finding in the record no error materially prejudicial to the defendant the judgment is affirmed.