No. 19,887.

Ross B. Broadhead and Lee Rhoades, *Appellees*, v. The Atchison, Topeka & Santa Fe Railway Company, *Appellant*.

### SYLLABUS BY THE COURT.

1. Shipping Cattle—*Unloading in Transit—Quarantined Yards—Construction of Telegram—Evidence*. In an action for damages to a shipment of cattle caused by a delay in starting after they were loaded, and by unloading in transit in yards which had been ordered quarantined by the Bureau of Animal Industry, so that such cattle had to be kept there several days and disinfected, evidence was offered for the purpose of showing that the following telegram:

"A. T. & S. F. yards Waynoka infected scabies account Elwood cattle. Quarantine until disinfected. Bureau Supervision.
Signed: Allan."

required only the quarantining of certain portions of such yards in which infected cattle had been recently handled, which evidence was rejected. *Held*, that such ruling was proper.

2. Same—*Written Notice of Damages Claimed—When Unnecessary*. The shipping contract provided that written notice of a claim for damages should be given to some officer of the company or to the nearest station agent before the stock should be removed from the destination or place of delivery and before it had been slaughtered or intermingled with other stock. The cattle were kept at the quarantined yards seven days and there dipped by the servants of the defendant under the supervision of the Bureau of Animal Industry. No claim was made for damages caused after the shipment left the yards. *Held*, under such circumstances written notice was not required as to damages then apparent, but in order to recover for damages so caused but thereafter developing, notice was required unless waived.

3. Same — *Negligence — Requested Instructions Refused — Error*. The allegations, proof and instructions involved two grounds of damage, delay at Argentine and the treatment received at Waynoka. The defendant requested that the jury be required to state, if they found the defendant negligent, in what respect or respects they considered it negligent, which request was refused. *Held*, error.

Appeal from Douglas district court; Charles A. Smart, judge. Opinion filed February 12, 1916. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellant.

*M. A. Gorrill,* and *Henry H. Asher,* both of Lawrence, for the appellees.

The opinion of the court was delivered by

WEST, J.:   November 4, 1913, the plaintiffs delivered to the defendant at Kansas City two carloads of cattle to be transported to Woodward, Okla., and paid the freight thereon.   The shipment was permitted to stand on the sidetracks at Argentine about four hours after the cattle were loaded, and when reaching Waynoka, Okla., there was not sufficient time remaining to reach the point of destination without violating the federal twenty-eight-hour act, and the cattle were unloaded in the yards there.   It developed that these yards had, by an officer of the Bureau of Animal Industry, been ordered quarantined, and the cattle were held therein until the 13th of November, and in the meantime were disinfected under the order of the Bureau of Animal Industry and as a result thereof were damaged.   To recover for this damage the plaintiffs brought this action, alleging negligence in the delay at Argentine and in unloading into infected yards at Waynoka; that the defendant knew and was fully advised that these yards had been on the 5th day of November, 1913, quarantined by an inspector in charge of the Bureau of Animal Industry on account of being infected with scabies.

The cattle were unloaded at Waynoka at 12:50 p. m., November 6.   The yards at Waynoka comprise forty-two pens, most of them thirty by fifty-four feet; three loading chutes and one unloading platform.   October 31, a shipment of cattle from Abernathy, Tex., was unloaded in the Waynoka yards through the north chute into pen No. 42 at the northeast corner of the yards.   On November 3 some cattle from Kenna, N. Mex., were unloaded and placed in pens Nos. 5 and 6 on the west side of the yards and near the central portion thereof.   These were reloaded through the south and center loading chutes.   On November 5 the station agent received a telegram from inspector Allan of the Bureau of Animal Industry at Fort Worth, reading as follows:

"A. T. & S. F. yards Waynoka infected scabies account Elwood cattle. Quarantine until disinfected.   Bureau Supervision.   Signed: ALLAN."

· November 3, a notice was served upon the railway company, Kansas City, Mo., to—

"Clean and disinfect car 52461 A. T. & S. F.; scabby cattle from Abernathy, Texas.   Until chutes and pens through which these cattle

were handled are cleaned and disinfected all cattle handled through them will be classed as cattle exposed to scabies. Walter A. Smith, Veterinary Inspector, B. A. I. Unloaded Waynoka, October 31, 1912."

From all of which it appears that when the plaintiffs' cattle arrived at Waynoka on November 6 the defendant had notice that the Abernathy cattle were infected and that all cattle handled through the pens and chutes which they had passed through would, until cleaned and disinfected, be classed as cattle exposed to scabies, and had received the order of November 5, that the yards were infected on account of the Elwood cattle—that is, the cattle from Abernathy—and to quarantine until disinfected. The information that the shipment from Kenna, N. Mex., unloaded on November 3, had been found to be infected was received by the agent after the plaintiffs' cattle had been unloaded.

The delay at Argentine, while of itself not necessarily of great significance, becomes an important element in the case if it thereby became necessary to unload at Waynoka in order to keep from violating the twenty-eight-hour law. The question of negligence in unloading into infected yards must rest upon the knowledge possessed by the company at the time of such unloading. It is strenuously urged that only two small portions of the yards had been occupied by infected cattle, and that the order from inspector Allan to quarantine the yards meant and made necessary the quarantine of only such portions thereof as were actually infected. No question is made about the duty of the railway company to obey the orders of the Bureau of Animal Industry, and the plain, unambiguous telegram was sufficient to require the defendant to refrain from unloading the plaintiffs' cattle in any portion of such yards. Hence it was not error for the trial court to reject evidence as to how such telegram was or should have been construed; neither was it error to speak of the yards in the charge as those that had been infected with a disease common among cattle. The foreman of the stockyards testified that the order was "to quarantine the stockyards and close the yards for unloading purposes until yards had been disinfected and quarantine raised by B. A. I. inspector. During the time Broadhead shipment occupied my yards, the yards were subject to the supervision of the B. A. I. doctor. Dr. Warner

supervised the disinfecting of the yards and spraying of the Broadhead cattle." It is not the infection, but the dipping of the cattle and the rough treatment incident thereto, that the plaintiffs complain of, and whatever distinctions are sought to be made between a quarantine of the yards and a quarantine of certain chutes and pens only, the cattle were by the defendant unloaded into yards which it had been ordered to quarantine and where they had to be disinfected, and were damaged thereby.

It is urged that written notice of plaintiffs' claim was not given as required by the eighth clause of the shipping contract, and that such notice should have been given after unloading at destination when the cattle were discovered at the owner's ranch. The testimony shows that the cattle were unloaded at Waynoka on the 6th and remained there until the 13th, during which time they were dipped by the defendant's employees under the supervision of the Bureau of Animal Industry, and no claim is made for any damage except such as was caused by the delay at Argentine and the treatment at Waynoka. The clause of the contract under consideration, so far as applicable, reads as follows:

"In order that any loss or damage to be claimed by the shipper may be fully and fairly investigated and the fact and nature of such claim or loss preserved beyond dispute and by the best evidence, it is agreed that as a *condition precedent* to his right to recover any damages for any loss or injury to his said stock during the transportation thereof, or at any place or places where the same may be loaded or unloaded for any purpose on the company's road, . . . the shipper or his agent in charge of the stock will give *notice in writing* of his claim therefor to some officer of said company, or to the nearest station agent, or if delivered to consignee at a point beyond the company's road, to the nearest station agent of the last carrier making such delivery, before such stock shall have been removed from the place or destination above mentioned, or from the place of delivery of the same to the consignee, and before such stock shall have been slaughtered or intermingled with other stock, and will not move such stock from said station or stockyards until the expiration of three hours after the giving of such notice."

While neither the shipper nor the carrier could tell when the cattle left Waynoka, or even when they reached the owner's ranch, what might develop as the result of the treatment while being disinfected at the Waynoka yards, still each had equal

knowledge and means of knowledge when the cattle left Waynoka, so that a written notice that the shippers would claim damages for injuries already apparent could not have been of any benefit or advantage to the defendant company. Under such circumstances, the rule is well settled that written notice is not required. (*Railway Co. v. Frogley,* 75 Kan. 440, 89 Pac. 903; *Darling v. Railway Co.,* 76 Kan. 893, 902, 93 Pac. 612, 94 Pac. 202; *Railway Co. v. Wright,* 78 Kan. 94, 95 Pac. 1132; *Cockrill v. Railway Co.,* 90 Kan. 650, 136 Pac. 322.) But as to damages subsequently developing as the result of such dipping, notice was required unless waived, so that the carrier could be advised that a claim would be made for such damages as well as for those already apparent. (*Giles v. Railway Co.,* 92 Kan. 322, 140 Pac. 875.) The suggestion that the notice should have been deferred until the cattle were discovered at the ranch of the owner does not accord with the language of the clause in the shipping contract under consideration.

The defendant requested the court to submit to the jury eight special questions. The four submitted were answered to the effect that the cattle were held in the yards under the orders of the Bureau of Animal Industry and sprayed and disinfected under government supervision; that the yards at Waynoka were under quarantine after two o'clock, November 6, 1913, which quarantine took effect November 3, 1913. Questions 5 and 6 were whether the defendant was notified on November 6 that portions of the yards held infected cattle, and if so, when such notice was served. It is argued that it was desired by these two questions to show, if possible, that the notice that the Kenna shipment was infected was not received until after the plaintiffs' cattle were unloaded. While not very material, and while it is conceded that the evidence on this point is somewhat convincing in favor of the defendant, it would have been proper to submit these interrogations, although their refusal can not be held to be materially prejudicial. Question 8 asked the jury to state in what manner the eighth clause of the shipping contract was complied with. This question was so utterly improper in form and substance that the court could not do otherwise than refuse its submission. Question 7 was:

"If you find the defendant negligent, then state in what respect or respects you consider the defendant negligent."

The plaintiffs had alleged two acts of negligence, the delay at Argentine and the unloading at Waynoka, and the court had with considerable care instructed as to each, charging that:

"They claim that these two items of negligence form the basis of the damages they sustained. . . . Drawing your attention now to the first allegation of negligence, the delay at Argentine, if there was a delay. There is no evidence that the delay at Argentine injured these cattle in and of itself, but it becomes important in connection with another branch of this case. . . . Now, if this delay in Argentine made it necessary for them to unload the cattle at Waynoka in order to comply with this rule, then it becomes important. In other words, if they had not delayed the shipment in Kansas City, might they have arrived at their destination within the twenty-eight hours? So the delay in Kansas City becomes important in that regard . . . and so, gentlemen, it becomes quite important for you to inquire, did the delay in Kansas City make it necessary to unload the cattle at Waynoka? Because, it being admitted that they did unload the stock into the Waynoka yards, they were bound to furnish yards there reasonably safe for the cattle."

Having given these instructions, and the jury having been thus plainly charged concerning the two claims of negligence on which the plaintiffs relied, it was not only proper but a matter of right that question 7 should have been submitted. To this effect have been the decisions for more than a generation. (*C. B. U. P. Rld. Co. v. Hotham,* 22 Kan. 41; *Johnson v. Husband,* 22 Kan. 277; *City of Wyandotte v. Gibson, Adm'x,* 25 Kan. 236; *Foster v. Turner,* 31 Kan. 58, 1 Pac. 145; *W. & W. Rld. Co. v. Fechheimer,* 36 Kan. 45, 12 Pac. 362, and cases cited; *A. T. & S. F. Rld. Co. v. Ayers,* 56 Kan. 176, 42 Pac. 722; *Barker v. Railway Co.,* 89 Kan. 573, 132 Pac. 156; *Cole v. Railway Co.,* 92 Kan. 132, 139 Pac. 1177; *Jones v. Interurban Railway Co.,* 92 Kan. 809, 813, 141 Pac. 999; *Adams v. Railway Co.,* 93 Kan. 475, 481, 144 Pac. 999.)

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.

WEST, J. (dissenting)·: In my judgment the instruction given by the trial court concerning notice was in accord with the declarations of this court in *Railway Co. v. Frogley,* 75 Kan. 440, 443, 89 Pac. 903; *Darling v. Railway Co.,* 76 Kan. 893, 901, 93 Pac. 612, 94 Pac. 202; *Railway Co. v. Wright,* 78 Kan. 94, 96, 95 Pac. 1132, and *Cockrill v. Railway Co.,* 90 Kan. 650, 653, 136 Pac. 322, and correctly stated the law.