C. A. RICHOLSON, *Appellee*, v. WILLIAM FERGUSON, *Appellant.*

No. 17,696.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Book Entries—Made by Third Party.* Under the provisions of the statute that entries in books intended as records of payments and similar matters, made in the regular course of business, at or near the time of the transaction, shall be admissible in evidence on proof that they were so made, the fact that a corporation made certain payments may be shown by its books, although it is not a party to the action.

2. PROMISSORY NOTE — *Contract — Defense — Burden of Proof.* Where one who had been the general manager of a corporation sells his stock under an agreement that a note given in part payment therefor shall be subject to a proportionate deduction on account of any just claims existing against the corporation and not shown by its books, in an action upon the note proof by the defendant that such claims were made against the corporation, and that a new manager paid them after a full investigation, makes out a *prima facie* case for a deduction, and casts upon the plaintiff the burden of showing that the claims so made and paid were not just.

Appeal from McPherson district court. Opinion filed June 8, 1912. Reversed.

*Frank O. Johnson,* for the appellant.
*David Ritchie,* for the appellee.

The opinion of the court was delivered by

MASON, J.: In 1906 J. T. Royston organized the Marquette Roller Mill Company, having a capital stock of $40,000. Only one share stood in his name, but his wife, for whom he acted as agent, owned a considerable amount of stock. He was general manager of the business until December, 1907, when he and his wife sold their stock to various persons, William Ferguson being the purchaser of twenty shares. A written agree-

ment for the sale provided that the price should be fixed by the book value according to an inventory to be taken, one-third to be paid in cash, one-third in six months, and the remaining third in a year, notes to be given for the deferred payments. The contract contained a provision reading: "The notes due in six months to be subject to deduction of pro rata shares of any just claims or bills of any nature that may be held by any parties against said Mill Company and which for any cause do not appear on the books of the Company at time of inventory." The inventory was made, and the price of Ferguson's stock was thereby fixed at $2125.29. He paid $1417.06 in cash, and gave his note for $708.53, the note bearing the memorandum—"This note subject to deduction for any claim against the Mill Co., and not appearing on the books of the Company." The note was transferred to C. A. Richolson, who brought action upon it. Ferguson answered alleging that at the time of his purchase of the stock there were just claims against the company, not shown on its books, amounting to $14,036.97, and that the reduction in price to which he was entitled on that account amounted to more than the note. At the trial the existence of three claims of that character was admitted. The defendant introduced evidence tending to show that after the sale of the Royston stock a number of claims were made against the company on account of matters not shown on the books; that these claims were investigated by the new manager and either paid in full or compromised by the payment of a less sum. The court directed a verdict for the plaintiff and the defendant appeals.

The new manager of the company testified that he had examined into the various claims that were made against the company by reason of the manner in which the business had been conducted under the former management, found that they were meritorious, and

Richolson v. Ferguson.

made the best settlement he could; that all such payments were correctly entered in the books under the title "Royston Suspense Account." That account, showing payments amounting in all to $13,636.97 was offered in evidence. The plaintiff contends that the books of the company were not admissible against him. We think they were clearly competent for the purpose of proving the amount paid out by the corporation upon claims not shown by the books at the time the stock was sold. The statute makes entries intended as records of payments admissible on proof that they were made in the regular course of business of any person or corporation, at or about the time of the transaction. (Civ. Code, § 384.) Here there was evidence not only of their having been so made, but that they were in fact correct.

A more difficult question is whether the fact that the corporation paid the claims is *prima facie* evidence that they were valid. The contract of Royston in selling the stock was in effect a warranty that there were no outstanding valid claims against the company not shown by the books, and the defendant's answer in effect asks damages for the breach of that warranty. The grantee of a warranty deed who without being sued buys in an outstanding title or pays off a claim, is required to prove its validity in order to have recourse against his grantor; and by the weight of authority a judgment against him is not even *prima facie* evidence against a grantor who had no notice of the action, although there are some decisions to the contrary, and Mr. Freeman says that the question has not been carefully considered. (1 Freeman on Judgments, 4th ed., § 187; 8 A. & E. Encycl. of L. 98; 2 Devlin on Real Estate, Deeds, 3d ed., §§ 918, 919, 925, 926; 2 Black on Judgments, §§ 567, 571.) Here the claims were paid without notice to the warrantor. They were not paid, however, by the person to whom the warranty was made, but by the corporation, over whose action

he had no control. As between the Roystons (or Richolson, who claims through them) and Ferguson the fact that the corporation paid the claims would have been competent evidence of their validity, if the officers had had personal knowledge of the matter, on the principle that makes a statement against interest admissible. Although the officers necessarily acted only upon information derived from others, their payment of the claims was some evidence that they believed them to be valid. The obvious purpose of the guaranty given to Ferguson was that he should get the stock at its actual value. The risk of claims being enforced against the company on account of matters not shown by the books was assumed by the Roystons. When such claims were presented to and paid by the company, Ferguson, through no fault of his own, was made to suffer the character of loss against which he had been insured. We think it was rather incumbent upon Richolson, claiming through the Roystons, to show that the claims paid were not just, than upon Ferguson to show that they were. The knowledge and means of information of J. T. Royston concerning the transactions were necessarily superior to those of Ferguson. The situation is unusual and we are aware of no case the facts of which are closely similar. Perhaps the nearest in principle is *Railroad Co. v. Gaba*, 78 Kan. 432, 97 Pac. 435. There a contract for the construction of a building imposed a loss of $10 upon the contractor for each day completion was delayed beyond a fixed date. A subcontractor agreed with the contractor to lose $10 for each day's delay caused by his failure to supply certain materials in time. A delay in the completion of the building was caused by the negligence of a railroad company in handling material shipped by the subcontractor. The contractor submitted to a deduction of $10 a day in his settlement with the builder, and the subcontractor to a similar deduction in his settlement with the contractor. It was held upon these

Spellman v. Street Railway. Co.

facts that the subcontractor could recover the same amount from the railroad company without proving that the circumstances were such that the builder could have enforced against the contractor a claim for damages at the rate of $10 a day.

The defendant asks that judgment in his favor be directed by this court. We think, however, that the ends of justice will be better served by a new trial. The trial court in effect sustained a demurrer to the defendant's evidence. The parties should have a further opportunity to introduce evidence.

The judgment is reversed and a new trial ordered.