No. 20,222.

THE SEVERY STATE BANK, *Appellee*, v. W. W. GRAGG, *Appellant*.

### SYLLABUS BY THE COURT.

1. ACTION—*Bank against Customer for Overdraft—Entries in Bank Books—Competent Evidence.* In an action by a bank against a customer to recover an alleged overdraft, entries in the books of the bank made in the regular course of business are competent (Civ. Code, § 384) in favor of the bank as *prima facie* evidence of the condition of defendant's account, and also to show to whose account checks drawn by him had been paid.

2. SAME—*Evidence of Bank Commissioner—Directions to Bank's Bookkeeper Competent Evidence.* In this action it is held that the defendant suffered no prejudice by the testimony of a deputy bank commissioner to the effect that when he took charge of the bank he found a draft drawn against the defendant which the bank had paid about ninety days previous and had been carrying as a cash item, and that he directed the bookkeeper to charge the draft to defendant's account, which was done.

3. SAME—*Trial—No Prejudicial Error.* Other evidence examined and instructions considered, and held, there was no error authorizing a reversal.

Appeal from Elk district court; ALLISON T. AYRES, judge. Opinion filed June 10, 1916. Affirmed.

*Howard J. Hodgson,* of Eureka, for the appellant.

*A. F. Sims,* of Howard, and *F. S. Jackson,* of Topeka, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The bank sued defendant to recover the sum of $1318.41, alleged to be an overdraft of his account. The sum sued for was made up of checks to the amount of $480.02, drawn on the bank by the defendant and duly paid, and a sight

draft drawn on him for $838.39 in payment of a carload of corn which was paid by the bank.

The defendant concedes the correctness of the amounts of the several items of the account, but claims he is entitled to credit for $1175, which he alleges he loaned the bank through its president, M. J. Bidwell. The bank claimed that the loan was made to Bidwell in his individual capacity and not to the bank. This question of fact was the sole controversy in the case. The jury returned a verdict in plaintiff's favor, and judgment was rendered against defendant, from which he appeals.

The plaintiff introduced in evidence its bank books showing the individual accounts both of defendant and M. J. Bidwell. It is claimed this prejudiced the defendant, that it was error to admit the books in evidence because the entries were made when he was not present and could not bind him. They were the books made in the regular course of business and were competent evidence under the statute. (Civ. Code, § 384; *Richolson v. Ferguson,* 87 Kan. 411, 413, 124 Pac. 360; *Barker v. Railway Co.,* 88 Kan. 767-770, 129 Pac. 1151; *Cockrill v. Railway Co.,* 90 Kan. 650, 653, 136 Pac. 322; 17 Cyc. 382.) They were *prima facie* evidence showing the amount of the overdraft, and that the $1175 check which defendant gave, payable to the order of M. J. Bidwell, had been paid to Bidwell's personal account. There was nothing on the check itself to give notice to the bank that it was money intended to be paid to the bank.

The draft for the corn was dated November 19, 1912, but was not charged to defendant's account until February, 1913, and then under these circumstances: Bidwell had absconded and the bank was in charge of Mr. Thompson, deputy bank commissioner, who testified that he found the draft in the bank carried as a cash item, and that he at once directed the bookkeeper to charge it to defendant's account. It is seriously contended that the evidence was improper, and very prejudicial to the defendant because, it is said, it gave the jury to understand that a state official, who testified he had no interest in the suit, had determined and decided that it was a legal charge against defendant, and it is argued that the jury were unduly impressed by the evidence. We think there was no danger of the testimony misleading or unduly impressing the

jury. Besides, the draft was properly charged to defendant's account, and he practically concedes this. He admits the draft was one authorized by him and was paid by the bank; and his sole defense is, that the bank owed him $1175 which he had loaned it and for which he should be given credit as against the draft and his other checks paid by the bank. He was not able to satisfy the jury that he loaned the money to the bank. The check given at the time he says he made the loan was payable to M. J. Bidwell or order. True, he says, Bidwell wrote the check and he signed it without observing how it was drawn, but the jury had the right to consider the fact that he had been president of the bank himself, and was supposed to have enough experience in banking to know how checks are drawn.

Mr. Thompson was also permitted to testify that in the customers' wallet, where collections belonging to customers were kept, he found a note which was introduced in evidence. The note was for $1175, signed by M. J. Bidwell and payable to defendant's order. It bore the same date as the check. While it is true there was no evidence offered to show that the defendant had ever seen the note or knew that it was there, it was not error to admit the note and the testimony concerning it.

The court sustained an objection to a question asked of the former cashier respecting his knowledge of the banking laws of the state prohibiting the payment of a draft where there are no funds to meet it. The objection was properly sustained. There is no doubt that the draft was paid and that defendant got the benefit of it.

We find no error in the instructions. Taken together they correctly informed the jury of the real issues in the case, and the jury understood that if they found from the evidence that the loan was made to the bank and not to Bidwell, the bank was responsible for its return and the defendant would be entitled to a credit for the amount thereof.

We find no error in the record, and the judgment will be affirmed.